[No. 77587-7.   En Banc.]
Argued June 29, 2006.     Decided August 17, 2006.

THE STATE OF WASHINGTON, *Respondent*, v. HECTOR L. MENDOZA, *Petitioner*.

*Patricia A. Pethick* and *Thomas E. Doyle*, for petitioner.

*Edward G. Holm, Prosecuting Attorney*, and *James C. Powers, Deputy*, for respondent.

¶1 MADSEN, J. — There is a conflict among the divisions of the Court of Appeals as to whether a defendant is entitled to relief when a miscalculated offender score results in a lower standard range than the range indicated in the plea agreement. We hold that where a guilty plea is based on misinformation regarding the direct consequences of the plea, including a miscalculated offender score resulting in a lower standard range than anticipated by the parties when negotiating the plea, the defendant may withdraw the plea based on involuntariness. But, where it is clear that a defendant was informed of the miscalculation before sentencing and does not object or move to withdraw the plea on that basis, the defendant cannot challenge the voluntariness of the plea on appeal.

## FACTS

¶2 Hector Mendoza was charged with one count of rape of a child in the third degree, one count of burglary in the first degree with sexual motivation, and one count of indecent liberties. On July 7, 2003, the parties entered a plea agreement which provided that Mendoza would plead guilty to one count of child molestation in the third degree. Mendoza's statement of defendant on plea of guilty described his offender score as 7, resulting in a standard range of 51 to 60 months. In exchange for Mendoza's guilty plea, the State agreed to recommend a 60 month sentence. The trial court accepted Mendoza's guilty plea and found him guilty of child molestation in the third degree.

¶3 A sentencing report was prepared that listed Mendoza's offender score as 6, resulting in a standard range of 41 to 54 months. During sentencing proceedings, the State explained that Mendoza's offender score had been

erroneously calculated in the plea agreement because a prior conviction that was listed as an adult felony conviction was in fact a juvenile felony conviction. Thus, as indicated in the sentencing report, his correct offender score was 6 and his standard range was 41 to 54 months. Based on the correct standard range, the State requested a sentence of 54 months. Mendoza's attorney asked the judge to consider sentencing him at the low end of the standard range. Mendoza did not object to the State's revised recommendation or mention any concern about his offender score or the lower standard range.

¶4 During proceedings held on August 18, 2003, Mendoza's attorney requested an evidentiary hearing to contest facts in the presentence report. In addition, the sentencing court considered Mendoza's objection to his counsel's representation and his request to withdraw his guilty plea based on ineffective assistance of counsel. When the court inquired into Mendoza's objection to his attorney's representation, Mendoza's attorney explained, among other things, that with respect to Mendoza's guilty plea, she recalled advising him that the State's "plea offer essentially spared him half the time that he would be looking at if he were convicted at trial." Tr. of Proceedings (Aug. 19, 2003) at 7. She continued, "[t]hen he made what I considered to be a voluntarily, intelligent decision to accept the plea agreement. We went through the plea hearing. As the Court points out, no mention of displeasure of his representation was made." Id. She explained that "[h]e simply agreed that in the trial posture, we were looking at quite a bit of jeopardy, and at that point agreed to settle the case." Id. at 8. Mendoza confirmed that his attorney advised him he was facing a 10-year sentence.

¶5 The sentencing court denied Mendoza's motion to withdraw his plea and stated that "there is nothing here that convinces me that there is anything to be gained by delaying further or convinces me that you have made a case for discharging your present court-appointed attorney and obtaining a new court-appointed attorney on the hope that

in the future you may be allowed to withdraw your plea."
*Id.* at 9. The judge sentenced Mendoza to 52 months.

¶6 Mendoza appealed, arguing his plea was involuntary
because he was not informed of the correct standard range
prior to pleading guilty. He asked that the Court of Appeals
remand to the trial court with directions that he be allowed
to decide whether to withdraw his guilty plea or seek
specific performance of the plea agreement, absent a show-
ing by the State that there are compelling reasons to limit
Mendoza's choice of remedy.

¶7 In an unpublished opinion, Division Two affirmed the
conviction and held that "a defendant enters an invalid plea
only when he enters it believing that his sentencing range
will be lower than in fact." *State v. Mendoza*, noted at 128
Wn. App. 1052, 2005 Wash. App. LEXIS 1874, at *6.[1] The
court in *Mendoza*, at *5-6, relied on a previous decision
where it held that "such erroneous information does not
render the guilty plea invalid on its face. A defendant
seeking to withdraw his guilty plea, based on an assump-
tion that the sentence would be harsher than it was in fact,
may still do so if he can meet the 'demanding standard' of
CrR 4.2(f), which requires a 'manifest injustice, i.e., "an
injustice that is obvious, directly observable, overt, not
obscure." ' " *In re Pers. Restraint of Matthews*, 128 Wn. App.
267, 274, ¶17, 115 P.3d 1043 (2005) (quoting *State v.
Branch*, 129 Wn.2d 635, 641, 919 P.2d 1228 (1996) (quoting
*State v. Saas*, 118 Wn.2d 37, 42, 820 P.2d 505 (1991))).

¶8 We granted review of this case to resolve the split of
authority in the divisions of the Court of Appeals. Division
One has held that a plea based on a mutual mistake about
the standard sentence range may be challenged as involun-
tary, regardless of whether the correct sentencing range is
less onerous. *State v. Murphy*, 119 Wn. App. 805, 806, 81
P.3d 122 (2002). Similarly, Division Three has held that a
defendant's guilty plea is involuntary when based on any

---

[1] The Court of Appeals also rejected Mendoza's pro se argument that he received
ineffective assistance of counsel, and Mendoza has not petitioned for review on
this issue.

misinformation regarding the direct consequences of a guilty plea. *State v. Moon*, 108 Wn. App. 59, 63, 29 P.3d 734 (2001).

## ANALYSIS

■■■■ ¶9 Due process requires that a defendant's guilty plea be knowing, voluntary, and intelligent. *In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 297, 88 P.3d 390 (2004) (citing *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969)). This standard is reflected in CrR 4.2(d), which mandates that the trial court "shall not accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea." Under this rule, once a guilty plea is accepted, the court must allow withdrawal of the plea only "to correct a manifest injustice." CrR 4.2(f). We have recognized the following circumstances as amounting to manifest injustice: the denial of effective counsel, the defendant's failure to ratify the plea, an involuntary plea, and the prosecution's breach of the plea agreement. *State v. Wakefield*, 130 Wn.2d 464, 472, 925 P.2d 183 (1996).

¶10 We have repeatedly held that a defendant may challenge the voluntariness of a guilty plea when the defendant was misinformed about sentencing consequences resulting in a more onerous sentence than anticipated. For example, in *State v. Miller*, 110 Wn.2d 528, 756 P.2d 122 (1988), we held the defendant was entitled to withdraw his guilty plea because both parties were unaware of a mandatory minimum sentence requirement. When Miller entered his guilty plea to first degree murder, he had been misinformed by his attorney, who in turn had been misinformed by the prosecutor, that he could receive an exceptional sentence of less than 20 years. Prior to sentencing, Miller was informed that a first degree murder conviction carried a mandatory 20-year sentence. On review, we held that because Miller entered his plea without knowing the sen-

tencing consequences of that decision, his plea was involuntary and he was entitled to a remedy of either specifically enforcing the agreement or withdrawing the plea. *Id.* at 536-37.

¶11 We subsequently held that a defendant may withdraw his guilty plea when he was not informed of mandatory community placement because that sentencing term constitutes a "direct consequence" of a guilty plea. *State v. Ross*, 129 Wn.2d 279, 916 P.2d 405 (1996). We explained that a sentencing consequence is direct when " 'the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment'." *Id.* at 284 (quoting *State v. Barton*, 93 Wn.2d 301, 305, 609 P.2d 1353 (1980)). We found that community placement is a direct consequence because it "affects the punishment flowing immediately from the guilty plea" and "imposes significant restrictions on a defendant's constitutional freedoms." *Id.* at 285, 286. Because Ross was not explicitly informed of the mandatory community placement and his plea was therefore involuntary, we held that he was entitled to withdraw it. *Id.* at 288.

¶12 Similarly, in *State v. Walsh*, 143 Wn.2d 1, 17 P.3d 591 (2001), we recognized that a defendant is entitled to withdraw his plea when the correct standard range is higher than the range stated in the plea agreement. Walsh had agreed to plead guilty to a reduced charge of second degree rape with the understanding his standard range was 86 to 114 months. After the plea was entered and before the sentencing hearing, the community corrections officer who prepared the presentence report determined that Walsh's vehicular assault conviction counted as two points, which resulted in a higher standard range of 95 to 125 months. The officer asked the court to impose an exceptional sentence of 136 months based upon deliberate cruelty to the victim.

¶13 At sentencing, the prosecutor told the court that the standard range was 95 to 125 months and recommended the low end of the range, 95 months. Walsh's attorney did

not object to the higher standard range and requested a sentence at the low end of that range. However,

[n]othing in the record show[ed] that Walsh himself was ever advised or realized before the sentencing proceeding that the standard range [was] not what the parties believed when the plea agreement was reached and accepted by the court. He was clearly not advised of the new standard range at that proceeding, and nothing suggests he was then aware of the change in the prosecutor's recommendation. There was simply no discussion of the matter at all.

*Id.* at 5. Walsh did not object or move to withdraw the guilty plea.

¶14 On review the only issue presented was whether Walsh could challenge the voluntariness of his plea for the first time on appeal. We determined that a defendant's misunderstanding of the sentencing consequences when pleading guilty constitutes a " 'manifest error affecting a constitutional right' " and therefore, Walsh was entitled to raise the issue for the first time on appeal. *Id.* at 7-8 (quoting RAP 2.5(a)(3)). Further, we concluded that because Walsh had been misinformed of the sentencing consequences, his plea was involuntary and he was entitled to withdraw it.

¶15 Most recently, in *Isadore*, 151 Wn.2d 294, we clarified that a defendant who is misinformed of a direct consequence of pleading guilty is not required to show the information was material to his decision to plead guilty. Isadore pleaded guilty to second degree burglary and third degree assault, but neither the State nor the defense was aware that Isadore's convictions required community placement after incarceration. After Isadore was sentenced, the Department of Corrections notified the prosecutor's office that Isadore's sentence should have included a mandatory one-year term of community placement. On the State's motion, the trial court amended Isadore's sentence to include the community placement condition. We granted Isadore's personal restraint petition, determined his plea

was involuntary, and granted his requested remedy of specific performance of the plea agreement.

¶16 In *Isadore*, we held that, in general, defendants need not establish the materiality of the sentencing consequence to their decision to plead guilty. We "decline[d] to adopt an analysis that requires the appellate court to inquire into the materiality of mandatory community placement in the defendant's subjective decision to plead guilty." *Id*. at 302. We reasoned, "[a] reviewing court cannot determine with certainty how a defendant arrived at his personal decision to plead guilty, nor discern what weight a defendant gave to each factor relating to the decision." *Id*.

¶17 This case requires us to decide whether a defendant is "misinformed of the direct consequence of a plea" so as to render the plea involuntary when the defendant is told after his plea is entered that he faces a lower standard range sentence than indicated in the plea agreement. We have already held the length of the sentence is a direct conse-quence of pleading guilty. We have also declined to adopt an analysis that focuses on the materiality of the sentencing consequence to the defendant's subjective decision to plead guilty. The same concerns that we considered in *Isadore* arise when the misinformation is that the standard range is lower than anticipated in the plea agreement:

> [R]isk management decisions of a defendant inherent in plea bargaining bear equally in situations where, as here, the correct standard range is lower than the mistaken standard range upon which a plea is entered. A defendant may evaluate the risks of trial versus guilty plea far differently if faced with a 12-month plus one day bottom of the standard range, rather than a 120-month bottom of the standard range.

*Moon*, 108 Wn. App. at 64 (Brown, J., concurring).

■■ ¶18 A knowing, voluntary, and intelligent guilty plea requires a meeting of the minds. *See Miller*, 110 Wn.2d at 531. In determining whether the plea is constitutionally valid, we decline to engage in a subjective inquiry into the

defendant's risk calculation and the reasons underlying his or her decision to accept the plea bargain. Accordingly, we adhere to our precedent establishing that a guilty plea may be deemed involuntary when based on misinformation regarding a direct consequence on the plea, regardless of whether the actual sentencing range is lower or higher than anticipated. Absent a showing that the defendant was correctly informed of all of the direct consequences of his guilty plea, the defendant may move to withdraw the plea.

¶19 Next, we must determine whether Mendoza has waived his right to contest his plea by failing to raise the issue at sentencing. We have previously held that a defendant may challenge the voluntariness of his plea even though he proceeds with a sentencing hearing. In *Walsh*, the defendant was sentenced within a higher standard range than that stated in the plea agreement. We held that he did not waive his challenge to the plea, however, because he was not advised of the miscalculated offender score or the available remedies until after he was sentenced. *Walsh*, 143 Wn.2d at 7. We also have held that a defendant generally cannot waive a challenge to a miscalculated offender score where the resulting sentence is in excess of what is statutorily authorized. *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 50 P.3d 618 (2002). This is because a defendant cannot agree to a sentence which the court does not have the statutory authority to impose. *Id.* at 876.

¶20 But when the defendant is informed of the less onerous standard range before he is sentenced and given the opportunity to withdraw the plea, the defendant may waive the right to challenge the validity of the plea. Unlike the circumstances in *Walsh*, where the defendant was not informed of the mistake before sentencing, or the circumstances in *Goodwin*, where waiver was inapplicable because the defendants had agreed to be subject to a higher sentence than authorized by statute, waiver is permitted when the defendant is advised of the correct standard range before sentencing and is sentenced within a statutorily

authorized lower standard range than contemplated by the plea agreement.

¶21 Here, the State informed the sentencing court and Mendoza that his offender score was erroneously calculated in the plea agreement. The prosecutor explained that in researching Mendoza's prior convictions for the presentence report, the State realized that one of Mendoza's convictions should have counted in his offender score as a juvenile felony offense. After being advised of the mistake, Mendoza did not object to the State's lower sentence recommendation. And, although Mendoza sought to withdraw his plea for other reasons, he did not mention the corrected standard range as one of his concerns. Because Mendoza did not object to sentencing or move to withdraw his plea as involuntary and because his lower sentence is statutorily authorized, we conclude that Mendoza waived his right to challenge the voluntariness of his guilty plea. Accordingly, we affirm his conviction and sentence.

## CONCLUSION

¶22 When a guilty plea is based on misinformation, including a miscalculated offender score that resulted in an incorrect higher standard range, the defendant may move to withdraw the plea based on involuntariness. However, if the defendant was clearly informed before sentencing that the correctly calculated offender score rendered the actual standard range lower than had been anticipated at the time of the guilty plea, and the defendant does not object or move to withdraw the plea on that basis before he is sentenced, the defendant waives the right to challenge the voluntariness of the plea.

ALEXANDER, C.J., and C. JOHNSON, SANDERS, BRIDGE, CHAMBERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.