153 P.3d 898 (2007)
STATE of Washington, Respondent,
v.
Kevin J. SMITH, Appellant.
No. 34077-1-II.
Court of Appeals of Washington, Division 2.
March 6, 2007.
*900 Catherine E. Glinski, Manchester, WA, for Appellant.
Randall Avery Sutton, Kitsap Co. Prosecutor's Office, Port Orchard, WA, for Respondent.
ARMSTRONG, J.
¶ 1 Kevin J. Smith pleaded guilty to forgery (count I) and unlawful possession of payment instruments (count II). He appeals the resulting convictions and sentence, arguing that the trial court should have granted his motion to withdraw his guilty plea because the plea agreement incorrectly stated that count II carried a 0- to 12-month standard range sentence when both counts actually carried 14- to 18-month standard range sentences. Smith also argues that the trial court erroneously included 1995 class C felony convictions in his criminal history when calculating his offender score. Smith reasons that, but for his incarceration under an erroneous sentence, he would have spent five crime-free years in the community before his current crimes and, therefore, the 1995 convictions would have washed out. Finding no error, we affirm.

FACTS
¶ 2 Kevin J. Smith entered an Alford[1] plea to forgery (count I) and unlawful possession of payment instruments (count II). The plea agreement erroneously stated that count II carried a 0- to 12-month standard range sentence. The plea agreement also stated, correctly, that count I carried a 14- to 18-month standard range sentence.
¶ 3 Before sentencing, Smith moved to withdraw his guilty plea, arguing that his plea was involuntary because he was misadvised as to his standard range on count II. The State, which conceded the error, responded that regardless of the standard range on count II, that count ran concurrently with count I, which carried a longer sentence than count II. The trial court reasoned that because the State agreed to recommend a maximum sentence of 14 months, the fact that count II's proper standard range was 14 to 18 months did not change the State's obligation to recommend a 14-month sentence. Accordingly, the court ruled that despite the mistake, Smith failed to show a manifest injustice.
¶ 4 Smith also challenged the State's calculation of his offender score, arguing that three of his prior class C felony convictions washed out under RCW 9.94A.525(2). A jury convicted Smith of three class C felonies in 1995. Smith filed three direct appeals challenging his sentence; on the third appeal, we affirmed the trial court's calculation of his offender score. See State v. Smith, 109 Wash.App. 1011, 2001 WL 1408648, 2001 Wash.App. LEXIS 2530 (2001). Smith then petitioned the Supreme Court for review. The court accepted review and stayed Smith's appeal pending its decision in State v. Lopez, 147 Wash.2d 515, 55 P.3d 609 (2002). After the court decided Lopez, the State and Smith stipulated that the State could no longer prove sufficient prior convictions to justify Smith's offender score of 10. The parties agreed that court should have sentenced Smith according to an offender score of 9. Under Smith's amended offender score, his sentence for the three 1995 convictions should have terminated in February 2000. Accordingly, the trial court ordered Smith's immediate release from custody.
¶ 5 At his sentencing hearing, Smith argued that because he should have been released no later than February 2000, the trial court should not count his 1995 convictions *901 since five years had elapsed between February 2000 and the date he committed the current offenses.
¶ 6 The trial court ruled that the legislature extended the wash out benefit for class C felonies "only if the defendant lives five years crime free in the community after [his] confinement ends." Report of Proceedings (RP) (Nov. 16, 2005) at 19. The court stated that because Smith did not complete five crime-free years in the community, his 1995 convictions did not wash. Accordingly, it included Smith's 1995 convictions in calculating Smith's offender score.

ANALYSIS

I. MOTION TO WITHDRAW GUILTY PLEA
¶ 7 Smith argues that the trial court should have granted his motion to withdraw his guilty plea because the plea agreement recited an incorrect standard range sentence for count II. He maintains that his plea was involuntary because he pleaded guilty believing that count II carried a lower standard range sentence than it actually did.
¶ 8 We review the trial court's ruling on a motion to withdraw a guilty plea for an abuse of discretion. State v. Zhao, 157 Wash.2d 188, 197, 137 P.3d 835 (2006) (citing State v. Marshall, 144 Wash.2d 266, 280, 27 P.3d 192 (2001)). A trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. State v. Dixon, 159 Wash.2d 65, 75, 147 P.3d 991 (2006) (quoting State v. Rohrich, 149 Wash.2d 647, 654, 71 P.3d 638 (2003)).
¶ 9 Due process requires that a defendant knowingly, intelligently, and voluntarily enter a guilty plea. State v. Branch, 129 Wash.2d 635, 642, 919 P.2d 1228 (1996). Beyond that, CrR 4.2(f) provides that "[t]he court shall allow a defendant to withdraw [his guilty plea] whenever it appears that the withdrawal is necessary to correct a manifest injustice." The "manifest injustice" standard is demanding, and requires "`an injustice that is obvious, directly observable, overt, [and] not obscure.'" State v. Mendoza, 157 Wash.2d 582, 586, 141 P.3d 49 (2006) (quoting In re Pers. Restraint of Matthews, 128 Wash. App. 267, 274, 115 P.3d 1043 (2005)). The defendant has the burden of showing that a manifest injustice has occurred. State v. Turley, 149 Wash.2d 395, 398, 69 P.3d 338 (2003) (citing State v. Taylor, 83 Wash.2d 594, 596, 521 P.2d 699 (1974)).
¶ 10 An involuntary plea constitutes a manifest injustice for purposes of CrR 4.2(f). Taylor, 83 Wash.2d at 597, 521 P.2d 699. A guilty plea is voluntary if the defendant is advised of all direct consequences of that plea. In re Pers. Restraint of Isadore, 151 Wash.2d 294, 300, 88 P.3d 390 (2004) (citing State v. Ross, 129 Wash.2d 279, 284, 916 P.2d 405 (1996)). The length of a sentence is a direct consequence of a guilty plea because it represents "`a definite, immediate and largely automatic effect on . . . the defendant's punishment.'" Mendoza, 157 Wash.2d at 588, 141 P.3d 49 (quoting Ross, 129 Wash.2d at 284, 916 P.2d 405); see also State v. Morley, 134 Wash.2d 588, 621, 952 P.2d 167 (1998) (citing In re Pers. Restraint of Baca, 34 Wash.App. 468, 471, 662 P.2d 64 (1983) (the maximum sentence of a charge is a direct consequence of a guilty plea)).
¶ 11 A defendant's guilty plea is involuntary when "based on misinformation regarding a direct consequence on the plea, regardless of whether the actual sentencing range is lower or higher than anticipated." Mendoza, 157 Wash.2d at 591, 141 P.3d 49. Accordingly, a defendant is not required to show that the misrepresented sentence range materially affected his decision to plead. See Isadore, 151 Wash.2d at 302, 88 P.3d 390; Mendoza, 157 Wash.2d at 590-91, 141 P.3d 49.
¶ 12 Still, the defendant must establish that the unexpected sentence provision was a direct consequence of his guilty plea; one that represents "a definite, immediate and largely automatic effect on . . . the defendant's punishment." Mendoza, 157 Wash.2d at 588, 141 P.3d 49. Here, the plea agreement stated that count I carried a 14- to 18-month standard range, and that count II carried a 0- to 12-month standard range sentence. In fact, count II carried a 14- to 18-month standard range sentence. But *902 RCW 9.94A.589(1)(a) requires the sentences for counts I and II to run concurrently. Accordingly, Smith faced an 18-month sentence at the maximum, and the plea agreement bound the State to recommend a 14-month sentence. Although the plea agreement stated an incorrect standard range sentence for count II, Smith was not misinformed about a direct consequence of his guilty plea because he received the same punishment under the correct sentencing range that he would have received under the erroneous range. In short, Smith's controlling sentencing range was 14 to 18 months, a direct consequence of his plea to count I that his plea to count II did not affect.
¶ 13 Before sentencing, Smith requested permission to withdraw his guilty plea only with respect to count II. The trial court did not allow Smith to withdraw his plea to count II, nor could it have granted Smith his requested relief. In Turley, 149 Wash.2d at 398-400, 69 P.3d 338, our Supreme Court held that because a plea agreement is a "package deal," a trial court may not grant or deny a motion to withdraw a plea agreement as to an individual separate count when the defendant pleaded guilty to multiple counts in one agreement.
¶ 14 The trial court did not abuse its discretion in concluding that Smith voluntarily entered into the plea agreement and that the error in the plea agreement did not result in a manifest injustice. See Mendoza, 157 Wash.2d at 587, 141 P.3d 49 (citing State v. Wakefield, 130 Wash.2d 464, 472, 925 P.2d 183 (1996) (an involuntary plea constitutes a manifest injustice)).

II. OFFENDER SCORE CALCULATION
¶ 15 Smith argues that the trial court erred by including the three 1995 class C felonies in his offender score because if he had been sentenced properly for those convictions, he would have been released in February 2000. He reasons that the wash out provision of RCW 9.94A.525(2) applies to those convictions because five years elapsed between the time his sentence should have ended and the time he committed the current offenses.
¶ 16 While Smith's third appeal from his 1995 convictions was pending in the Supreme Court, the Supreme Court decided State v. Lopez, 147 Wash.2d 515, 55 P.3d 609 (2002). In Lopez, the court held that the State cannot offer additional evidence of prior convictions on remand for resentencing; rather, the trial court must resentence the defendant on the existing record. Lopez, 147 Wash.2d at 520-21, 55 P.3d 609. As a result of Lopez, the State and Smith stipulated that the State could prove only sufficient prior convictions to support an offender score of 9 rather than the score of 10 that the trial court used to sentence Smith. Under Smith's amended offender score, his sentence for the three 1995 convictions should have terminated in February 2000.
¶ 17 RCW 9.94A.525(2) provides, in relevant part, that
Class C prior felony convictions . . . shall not be included in the offender score if, since the last date of release from confinement . . . pursuant to a felony conviction, if any, or entry of judgment and sentence, the offender had spent five consecutive years in the community without committing any crime that subsequently results in a conviction.
¶ 18 Smith argues that because his sentence should have ended in February 2000, his continued confinement was not "pursuant to a felony conviction but rather pursuant to an erroneous [j]udgment and [s]entence." Br. of Appellant at 10. Thus, he argues, the five-year clock should have started in February 2000.
¶ 19 Smith does not contend that the sentencing court lacked jurisdiction to impose the sentence that extended past February 2000. Nor do we find any failure of the trial court's jurisdiction in imposing the overlong sentence. At most, the sentence was subject to challenge for legal error. And until an appellate court overturned his sentence, Smith's conviction and sentence remained valid. See In re Pers. Restraint of Fleming, 129 Wash.2d 529, 533, 919 P.2d 66 (1996) (subject matter jurisdiction exists where the court has the authority to adjudicate the type of controversy in the action and it continues to exist despite an erroneous interpretation *903 of the law) (citing State v. Moen, 129 Wash.2d 535, 545, 919 P.2d 69 (1996)). Further, although the Supreme Court accepted review, the parties resolved the issue by stipulation before that court considered the case on its merits. Thus, we are not persuaded by Smith's argument that he was not being held after February 2000 "pursuant to a felony conviction."
¶ 20 Moreover, even if we assume that the State wrongly held Smith after February 2000, the legislature intended to reward only those defendants who spend five consecutive years in the community without committing a crime. Smith cannot show five crime-free years. And although his incarceration past February 2000 is partially responsible for the problem, we have no way of knowing whether Smith would have remained crime-free for five years if he had been released in February 2000.
¶ 21 Smith also argues that excluding the period of time he "wrongly" spent in custody after February 2000 from the wash out period violates his right to equal protection. Equal protection requires the government to treat persons similarly situated the same. In re Pers. Restraint of Knapp, 102 Wash.2d 466, 473, 687 P.2d 1145 (1984) (citing Harmon v. McNutt, 91 Wash.2d 126, 130, 587 P.2d 537 (1978)). Smith argues that his situation is similar to a person who is incarcerated pending trial and then acquitted. He maintains that that person would not have his five-year crime period interrupted. But as we have discussed, the State held Smith under valid convictions that have never been overturned. At most, Smith's sentence was subject to legal challenge. Because Smith is not similarly situated to a person who has not been convicted, his equal protection argument fails.
¶ 22 Finally, Smith argues that "equity entitles [him] to credit for the time he was wrongfully incarcerated, when applying the statutory wash[ ]out provision." Br. of Appellant at 11. Citing In re Personal Restraint of Roach, 150 Wash.2d 29, 74 P.3d 134 (2003), he argues that equity precludes the court from increasing his sentence because he was erroneously imprisoned beyond his release date. In Roach, the court adopted "an equitable doctrine of relief for a prisoner released from state custody due to the State's negligence." In re Roach, 150 Wash.2d at 30, 74 P.3d 134. But Smith was not released early due to the State's negligence; nor did the Department of Corrections hold him longer than it had authority to hold him. Smith's argument that equity precludes the court from including the 1995 class C felony convictions in his offender score is without merit.
¶ 23 Affirmed.
We concur: BRIDGEWATER, P.J., and QUINN-BRINTNALL, J.
NOTES
[1] North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).