FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2013 APR 29 AM 10: 03



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 68042-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| BENNETT REEDY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: April 29, 2013 |
| | ) | |

Lau, J. — Bennett Reedy appeals the trial court's order denying his petition for relief from registration as a sex offender. Reedy acknowledges that he did not spend 10 consecutive crime-free years in the community since his last date of release from custody as required by statute, but he argues the trial court erred in declining to exercise its equitable powers to establish an earlier "constructive release date." Appellant's Br. at 23. Finding no error, we affirm.

## FACTS

In August 1994, Bennett Reedy pleaded guilty to one count of third degree rape and one count of unlawful imprisonment. On August 26, 1994, the trial court sentenced Reedy to concurrent sentences of 14 months and 3 months, respectively, with credit for

309 days served. Based solely on the 14-month incarceration term ordered, Reedy's expected release date was December 24, 1994.[1] The court's judgment and sentence ordered that "Mr. Reedy may only be released to CCO [(community corrections officer)] when appropriate housing has been arranged. See Appendix F." Appendix F provided:

> [Reedy] may be released to the CCO as soon as appropriate living arrangements can be made (which would require a plan appropriate to ensure that he will be available for the court for supervision throughout the 24 months community placement period).
> Congregate care facility placement is a condition of release. Mr. Reedy shall remain in a congregate care facility throughout 24 mo. period.

The court also ordered Reedy to register as a sex offender.

Due to the congregate care condition,[2] Reedy remained in custody beyond his early release date. On October 21, 1994, defense counsel filed a motion to modify the judgment and sentence and to release Reedy because congregate care could not be arranged before December 24. The motion stated in relevant part:

> 5. King County Jail will not release the defendant because of language in the original Judgment and Sentence stating, "Mr. Reedy may only be released to CCO when appropriate housing has been arranged."
> 6. Department of Corrections will not release Mr. Reedy based upon the above quoted language in two Judgment and Sentences.
> 7. The Community Corrections Officer assigned to Mr. Reedy, Barbara McPhee, has not been able to find appropriate housing and treatment due in part to Mr. Reedy's custody status.
> 8. Department of Corrections, without further action by the court, will hold Mr. Reedy until December 24, 1994.

---

[1] This date was Reedy's "maximum" release date, meaning his release date if he received no earned early release credits. In fact, Reedy had earned 155 days' early release credit as of August 1994.

[2] Under WAC 51-50-0308, congregate care facilities are buildings or structures "in which people are cared for or live in a supervised environment . . . or in which people are detained for penal or correctional purposes or in which the liberty of the occupants is restricted."

On October 24, the court signed an order for Reedy's immediate release. Reedy was released for a two-day period. But the court vacated its October 24 order after learning that Reedy was in Department of Corrections (DOC) custody rather than in King County jail. Reedy was then reincarcerated at DOC and not released on his maximum release date of December 24, 1994.

In January 1995, the court scheduled a new sentencing review hearing to address Reedy's "post-release residence in congregate care facility." On February 16, the court modified Reedy's community placement to allow for his conditional release for an assessment at a congregate care facility:

> The defendant may be temporarily released to the care of DOC . . . to be interviewed by RTS [(residential treatment specialist)] (should RTS not come to the jail) and then subsequently released to RTS once placement has been made. Defendant shall abide by all conditions of his CCO and RTS during community placement.

Reedy was unable to arrange housing at a congregate care facility, apparently due to lack of space. On March 1, 1995, the court modified the judgment and sentence to permit Reedy's immediate release but required him to report daily to DOC and reside at a congregate care facility when space became available. Reedy was released from custody that day.

On February 17, 2005—just short of 10 years after his release from custody on the 1994 rape conviction—Reedy was arrested and charged with fourth degree assault/domestic violence. Reedy pleaded guilty to the offense. Reedy has since been convicted of felony violation of a protection order/domestic violence (May 2005), failure to register as a sex offender (May 2008), and fourth degree assault/domestic violence (May 2011).

In March 2008, Reedy moved for relief from registration as a sex offender under

former RCW 9A.44.140 (1)(c) and (3)(a).[3] He argued that for legal and equitable

reasons, the court should find he met RCW 9A.44.140's requirement that petitioners

spend 10 consecutive years in the community without being convicted of any new

offenses:

> Had Mr. Reedy been released, as required, on December 24, 1994 the maximum release date possible under his sentencing range, he would have been eligible for automatic de-registration under RCW 9.94A.140(1)(c). The offense barring his automatic de-registration occurred on February 15, 2005, approximately 13 days before he would have been eligible even given that his term of total confinement exceeded the maximum in his standard range. The equities in this case require that Mr. Reedy be relieved of his requirement to register as a sex offender.

No action was taken on this motion. Reedy renewed his motion in November 2011,

relying on RCW 9A.44.140(3)[4] and RCW 9A.44.142(1)(b).[5] The court denied the

---

[3] The version of this statute applicable when Reedy requested relief from registration in 2008 provided in relevant part:
(1) The duty to register under RCW 9A.44.130 shall end:

. . . .

(c) For a person convicted of a class C felony . . . ; Ten years after the last date of release from confinement, if any, (including full-time residential treatment) pursuant to the conviction, or entry of the judgment and sentence, if the person has spent ten consecutive years in the community without being convicted of any new offenses.

. . . .

(3)(a) . . . [A]ny person having a duty to register under RCW 9A.44.130 may petition the superior court to be relieved of that duty, if the person has spent ten consecutive years in the community without being convicted of any new offenses. . . .
Former RCW 9A.44.140 (2006) (emphasis added).

[4] The version of this statute applicable when Reedy renewed his motion in 2011 is the same as the current version:
For a person convicted in this state of a class C felony, a violation of RCW 9.68A.090 or 9A.44.096, or an attempt, solicitation, or conspiracy to commit a class C felony, and the person does not have one or more prior convictions for a

-4-

motion, finding that Reedy had not spent 10 consecutive years in the community without being convicted of a disqualifying offense.

## ANALYSIS

Reedy's 1994 third degree rape conviction requires him to register as a sex offender. RCW 9A.44.130(1)(a); RCW 9.94A.030(46)(a)(i); RCW 9A.44.060. Third degree rape is a class C felony. RCW 9A.44.060(2). A class C felony sex offender's duty to register automatically ends "ten years after the last date of release from confinement, if any, (including full-time residential treatment) pursuant to the conviction, or entry of the judgment and sentence, if the person has spent ten consecutive years in the community without being convicted of a disqualifying offense during that time period." RCW 9A.44.140(3).[6] The 10-year registration period is mandatory. See RCW

---

sex offense or kidnapping offense and the person's current offense is not listed in RCW 9A.44.142(5), the duty to register shall end ten years after the last date of release from confinement, if any, (including full-time residential treatment) pursuant to the conviction, or entry of the judgment and sentence, if the person has spent ten consecutive years in the community without being convicted of a disqualifying offense during that time period.

RCW 9A.44.140(3). The parties cite to different versions of the relevant sex offender statutes throughout their appellate briefs. None of the amendments since 1994 materially affects our analysis and neither party asks us to decide which version applies, so we refer to the current statutes in analyzing Reedy's claims.

[5] This provision allows any person who is required to register under RCW 9A.44.130 to petition the superior court to be relieved of that duty. Among other requirements, the petitioner must show he or she "has spent ten consecutive years in the community without being convicted of a disqualifying offense" and must show by clear and convincing evidence that he or she is sufficiently rehabilitated to warrant relief from the duty to register. RCW 9A.44.142(1)(b), (4).

[6] The State claims, "Alternatively, a superior court may grant a petition to relieve an offender of the duty to register if, among other criteria, 'the person has spent ten consecutive years in the community without being convicted of any new offenses.'" Resp't's Br. at 7 (quoting former RCW 9A.44.140(3)(a) (2009)). This subsection now

9A.44.140 ("The duty to register under RCW 9A.44.130 <u>shall continue</u> for the duration provided in this section.") (emphasis added).

Reedy concedes he did not spend 10 consecutive crime-free years in the community because his February 2005 fourth degree assault/domestic violence offense occurred less than 10 years after his March 1, 1995 release from custody. However, he argues that he was illegally detained in custody beyond his release date and, thus, "[p]ursuant to its equitable powers, the court had authority to establish a <u>constructive</u> release date of December 24, 1994, and thereby grant the motion for relief from registration, since Reedy spent ten years crime-free following that date." Appellant's Br. at 18.

This court addressed a similar issue in <u>State v. Smith</u>, 137 Wn. App. 431, 153 P.3d 898 (2007). There, Smith pleaded guilty to forgery and unlawful possession of payment instruments. <u>Smith</u>, 137 Wn. App. at 434. At sentencing, he challenged the State's calculation of his offender score, arguing that three prior class C felony convictions from 1995 washed out under RCW 9.94A.525(2). <u>Smith</u>, 137 Wn. App. at 435. The version of that statute in effect at the time of sentencing provided in relevant part:

> Class C prior felony convictions . . . shall not be included in the offender score if, since the last date of release from confinement . . . pursuant to a felony

---

appears in revised form at RCW 9A.44.142(1)(b). We question whether this provision applies to class C felony sex offenders, as their duty to register ends automatically once they spend 10 consecutive crime-free years in the community under RCW 9A.44.140(3). RCW 9A.44.142(1)(b) more likely provides a mechanism for individuals with longer registration periods (such as class A or B felony offenders) to petition for early relief under specific circumstances. Regardless, under either RCW 9A.44.140(3) or RCW 9A.44.142(1)(b), a class C felony sex offender cannot be relieved of his duty to register as a sex offender until he has spent 10 crime-free years in the community.

conviction, if any, or entry of judgment and sentence, the offender had spent five consecutive years in the community without committing any crime that subsequently results in a conviction. . . .

Former RCW 9.94A.525(2) (2004).

The parties agreed that Smith had been improperly sentenced for the 1995 convictions and that he should have been released in February 2000, but he was not actually released until after that time. Smith, 137 Wn. App. at 435-36. Smith argued that RCW 9.94A.525(2)'s five-year time clock should have started in February 2000 (which would cause his 1995 convictions to wash out) rather than when he was actually released from custody at a later time (which would cause his 1995 convictions not to wash out). Smith, 137 Wn. App. at 436. The trial court disagreed, finding that because Smith failed to complete five consecutive crime-free years in the community since the last date of release from confinement, his 1995 convictions did not wash out. Smith, 137 Wn. App. at 436.

On appeal, Smith challenged the trial court's inclusion of the 1995 convictions in his offender score. He claimed that if he had been properly sentenced for those convictions, he would have been released in February 2000. Smith, 137 Wn. App. at 439. We framed his argument as follows: "Smith argues that because his sentence should have ended in February 2000, his continued confinement was not 'pursuant to a felony conviction but rather pursuant to an erroneous [j]udgment and [s]entence.' Br. of Appellant at 10. Thus, he argues, the five-year clock should have started in February 2000." Smith, 137 Wn. App. at 439-40 (alterations in original).

Smith essentially argued that the trial court should have used February 2000 as a constructive release date because he should have been released at that time. We rejected his argument:

> Smith does not contend that the sentencing court lacked jurisdiction to impose the sentence that extended past February 2000. Nor do we find any failure of the trial court's jurisdiction in imposing the overlong sentence. At most, the sentence was subject to challenge for legal error. And until an appellate court overturned his sentence, Smith's conviction and sentence remained valid. See In re Pers. Restraint of Fleming, 129 Wash.2d 529, 533, 919 P.2d 66 (1996) (subject matter jurisdiction exists where the court has the authority to adjudicate the type of controversy in the action and it continues to exist despite an erroneous interpretation of the law) (citing State v. Moen, 129 Wn.2d 535, 545, 919 P.2d 69 (1996)). . . .
>
> Moreover, even if we assume that the State wrongly held Smith after February 2000, the legislature intended to reward only those defendants who spend five consecutive years in the community without committing a crime. Smith cannot show five crime-free years. And although his incarceration past February 2000 is partially responsible for the problem, we have no way of knowing whether Smith would have remained crime-free for five years if he had been released in February 2000.

Smith, 137 Wn. App. at 440. We explicitly rejected Smith's "equity" argument:

> Finally, Smith argues that "equity entitles [him] to credit for the time he was wrongfully incarcerated, when applying the statutory wash[-]out provision." Br. of Appellant at 11. Citing In re Personal Restraint of Roach, 150 Wn.2d 29, 74 P.3d 134 (2003), he argues that equity precludes the court from increasing his sentence because he was erroneously imprisoned beyond his release date. In Roach, the court adopted "an equitable doctrine of relief for a prisoner released from state custody due to the State's negligence." Roach, 150 Wn.2d at 30. But Smith was not released early due to the State's negligence; nor did the Department of Corrections hold him longer than it had authority to hold him. Smith's argument that equity precludes the court from including the 1995 class C felony convictions in his offender score is without merit.

Smith, 137 Wn. App. at 441 (alteration in original).

Similarly, Reedy contends that the trial court should have used December 24, 1994, as a constructive release date because he should have been released on that day. Like in Smith, Reedy does not contend that the trial court lacked jurisdiction to

impose the sentence or the attached conditions. "At most, the sentence was subject to challenge for legal error," and because no appellate court overturned Reedy's conviction and sentence, they remained valid. Smith, 137 Wn. App. at 440. Even assuming the State wrongly held Reedy after December 24, 1994, the plain language of both RCW 9A.44.140(3) and RCW 9A.44.142(1)(b) indicates legislative intent to reward only those offenders who spend 10 consecutive crime-free years in the community. Reedy cannot show 10 consecutive crime-free years. Like in Smith, although Reedy's incarceration past December 24, 1994, is "partially responsible for the problem, we have no way of knowing whether" Reedy would have remained crime-free for 10 years had he been released at that time. Smith, 137 Wn. App. at 440.

Citing In re Personal Restraint of Roach, 150 Wn.2d 29, 74 P.3d 134 (2003), and State v. Dalseg, 132 Wn. App. 854, 134 P.3d 261 (2006), Reedy argues he is entitled by analogy to the "equitable doctrine of credit for time spent at liberty . . . ." Appellant's Br. at 18. Roach involved a defendant who was erroneously released prior to completing his sentence due to the State's mistake. Roach, 150 Wn.2d at 31-32. Our Supreme Court framed the issue as "whether principles of equity require that the sentence of a mistakenly released prisoner be credited with time spent out of custody." Roach, 150 Wn.2d at 33. Finding no statute on point, the court adopted the Ninth Circuit's doctrine of credit for time spent at liberty, holding that "a convicted person is entitled to credit against his sentence for time spent erroneously at liberty due to the State's negligence, provided that the convicted person has not contributed to his release, has not absconded legal obligations while at liberty, and has had no further criminal convictions." Roach, 150 Wn.2d at 37.

Dalseg addressed whether defendants who served their sentences on work release at the State's recommendation were entitled to credit for time served when the State later learned that the work release program failed to comply with statutory requirements. Dalseg, 132 Wn. App. at 857. The court applied Roach's equitable doctrine of credit for time spent at liberty by analogy and held, "If equity entitles a convicted person to day-for-day credit for time spent at liberty due to the State's mistake, equity should entitle him to credit for time spent in some lesser form of restraint than the punishment actually imposed." Dalseg, 132 Wn. App. at 865.

Reedy's case is analogous to Smith, not to Roach or Dalseg. Unlike in Roach and Dalseg, Reedy was not released early or sentenced to a statutorily noncompliant program due to the State's negligence. Reedy cites to no authority supporting his claim that, as a matter of equity, the sentencing court had authority to establish a constructive release date in determining whether he spent 10 consecutive crime-free years in the community. State v. Logan, 102 Wn. App. 907, 911, 10 P.3d 504 (2000) ("'Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.'") (quoting DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)). While he cites examples of courts recognizing equitable doctrines, he fails to suggest what analysis or standards we should apply before exercising our equitable powers or establishing a new equitable doctrine.[7] Also, unlike in Roach and Dalseg,

---

[7] By contrast, when our Supreme Court adopted the equitable doctrine of credit for time spent at liberty, it supplied guidelines for the doctrine's application. See Roach, 150 Wn.2d at 37-38; see also Dalseg, 132 Wn. App. at 864-67 (applying Roach's guidelines and analysis).

here a contrary statute is on point. As discussed above, clear statutory language provides that a class C felony sex offender's duty to register ends only when he or she spends 10 crime-free years in the community. RCW 9A.44.140(3); RCW 9A.44.142(1)(b). We decline to exercise our equitable powers to contravene a clear statutory directive. See State v. Jones, 172 Wn.2d 236, 247 n.7, 257 P.3d 616 (2011) (declining to exercise equitable powers to contravene statutory scheme); State v. Donaghe, 172 Wn.2d 253, 268 n.15, 256 P.3d 1171 (2011) (same).

## CONCLUSION

The trial court properly declined to establish a constructive release date for purposes of relief from registration as a sex offender. We affirm.

WE CONCUR:

-11-