IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| STATE OF WASHINGTON, | No. 83277-8-1 |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| DARBY, TRAVIS WILLIAM, DOB: 02/11/1980, | |
| Appellant. | |

BOWMAN, J. — Travis William Darby pleaded guilty to first and second degree child molestation and third degree rape of a child, all with domestic violence (DV) designations. The trial court denied Darby's request for a special sex-offender sentencing alternative (SSOSA) and imposed a concurrent indeterminate sentence of 120 months to life and lifetime community custody. Darby appeals, arguing that the trial court erred by denying his SSOSA, that his plea agreement misinformed him of the consequences of his guilty plea, and that the court erred when it imposed discretionary supervision fees. We affirm his convictions but remand to strike the discretionary supervision fees.

FACTS

In September 2020, 15-year-old L.D. disclosed that Darby, her father, sexually assaulted her. She said he began abusing her when she was 10 years

old. She described an escalating pattern of sexual abuse that occurred over several years. And she explained how eventually, "she stopped fighting back because it was 'going to happen anyway.' " The abuse continued until police arrested Darby shortly after her disclosure.

Darby pleaded guilty to one count of first degree child molestation DV, one count of second degree child molestation DV, and one count of third degree rape of a child DV, committed against L.D. between 2014 and 2020. Darby's plea agreement advised him of the maximum and standard-range sentences for each crime. Under the "COMMUNITY CUSTODY" section, the agreement said that Darby faced a lifetime of community custody for the first and second degree child molestation convictions[1] and 36 months of community custody for the third degree child rape conviction. Darby sought a SSOSA.[2]

A certified sex-offender treatment provider evaluated Darby. The evaluation assessed Darby's "treatment needs, his amenability to treatment, and his safety to be in the community." The provider recommended imposing a SSOSA. But he noted that in Darby's interview, Darby said he did not begin abusing L.D. until 2020. Darby stated that L.B. initiated the relationship, and that " '[he] didn't force her, but [he] allowed it.' " So the evaluator found that Darby "does not report committing rape or having used force in a sexual encounter." And he explained that Darby's rationalizations for his conduct "keep him from

_____

[1] RCW 9.94A.701(1)(a) provides for no more than 36 months of community custody for a defendant charged with second degree child molestation. The parties agree the term of community custody for that count is an error.

[2] A SSOSA suspends confinement and allows the offender to remain in the community (with conditions) while they receive treatment. See RCW 9.94A.670.

accepting full responsibility for his actions." While the evaluation notes that Darby is generally amenable to treatment, "the nature of some of his problems suggest that treatment could be fairly challenging." The evaluation concludes that Darby "demonstrated amenability to specialized sex offender treatment" and posed a " 'Below Average Risk' for sexual recidivism."

The Department of Corrections (DOC) issued a presentence investigation report that recommended a sentence within the standard range instead of a SSOSA. The report explained:

> Darby's conduct was by all accounts, frightening and abhorrent to the victim, and should be punished accordingly. He not only committed a serious abuse of a position of trust, he committed forcible rape, and used his young daughter's natural curiosity to justify his actions. His behavior has caused a degree of emotional and mental harm that is most likely immeasurable, and has caused his daughter to be terrified of encountering him. Also of concern, [is] the defendant's inability to take full responsibility for his actions, making him not only a danger to reoffend, but also unlikely to make appropriate progress in treatment.

As part of DOC's report, L.D.'s mother expressed concerns that L.D. was " 'terrified' " and " 'worried about [Darby] getting out of jail and running into him.' " But she recognized that L.D. did not understand " 'the level of supervision [Darby] will be under when he gets out, the fact that it will be for life.' " She ultimately agreed to a SSOSA, stating that she " 'made [her] peace with [it], only because of the high level of supervision for [Darby], and the lifetime protection order for [her] daughter.' " And she repeated this sentiment in her "Victim Impact Statement" provided to the sentencing court.[3]

---

[3] Under RCW 9.94A.670(1)(c), " '[v]ictim' also means a parent or guardian of a victim who is a minor child unless the parent or guardian is the perpetrator of the offense," so we consider L.D.'s mother a victim as well.

3

At sentencing, the parties addressed Darby's request for a SSOSA. The prosecutor told the court that he "has concerns," "largely echoed in the presentence investigation report regarding [Darby] taking full responsibility." Defense counsel argued that Darby gave "a complete and very thorough confession and admission of what he did." He insisted that the "responsibility issues" related "purely to recollection of when the [abuse] actually occurred or when [it] started occurring. So it's not a denial . . . . It just was a confusion as to what dates and when this actually began." The State "struggled with" Darby's request, but ultimately supported granting the SSOSA because Darby's family relied on his financial contributions, and assuming there was a plan for housing and employment, "the SSOSA . . . is the best option in order to . . . provide for the family."

The sentencing court denied Darby's request for a SSOSA. It stated that it "read these reports several times . . . . The fact that this child was repeatedly raped for a number of years and molested and gave up fighting because she knew she couldn't stop it is just heart-wrenching." The court noted that L.D.'s mother seemed to "reluctantly" agree to the SSOSA because of the lifetime supervision requirement, "which is going to occur regardless of whether the Court grants a SSOSA." The court agreed with the concerns in the DOC report about Darby's amenability to treatment and cited the evaluation's finding that Darby did "not report committing rape or having used force in a sexual encounter."

Ultimately, the court determined that a SSOSA would be "too lenient" given the facts of the case and that Darby would not be amenable to treatment.

4

The trial court entered extensive written findings of fact and conclusions of law and imposed a concurrent standard-range, indeterminate sentence of 120 months' confinement to life. It also imposed lifetime community custody and several conditions, including no contact with L.D. Finally, the court found Darby indigent and waived all nonmandatory fees. But the court did not strike the discretionary DOC supervision fees language from the "conditions applicable to all community custody terms" section of the judgment and sentence.

Darby appeals.

## ANALYSIS

Denial of SSOSA

Darby argues that the trial court erred in denying his request for a SSOSA. We disagree.

We review a sentencing court's denial of a SSOSA sentence for abuse of discretion. State v. Osman, 157 Wn.2d 474, 482, 139 P.3d 334 (2006). A sentencing court abuses its discretion if its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). A decision is based on untenable grounds or made for untenable reasons "if it rests on facts unsupported in the record or was reached by applying the wrong legal standard." Id. A sentencing court also abuses its discretion "if it categorically refuses to impose a particular sentence or

if it denies a sentencing request on an impermissible basis."[4]  Osman, 157 Wn.2d at 482.

Sentencing courts must generally impose a sentence within the standard range.  Osman, 157 Wn.2d at 480.  A SSOSA is an alternative to a standard-range sentence and is available to certain offenders convicted of sex crimes.  See RCW 9.94A.670(2).  Whether to grant a SSOSA is entirely at the sentencing court's discretion.  State v. Sims, 171 Wn.2d 436, 445, 256 P.3d 285 (2011).  If an offender is eligible for and requests a SSOSA, the court must decide whether that alternative is "appropriate."  Osman, 157 Wn.2d at 480-81.

In determining whether a SSOSA is appropriate, the trial court must consider several factors, including, (1) "whether the offender and the community will benefit from use of [a SSOSA]," (2) "whether [a SSOSA] is too lenient in light of the extent and circumstances of the offense," (3) "whether the offender has victims in addition to the victim of the offense," (4) "whether the offender is amenable to treatment," (5) "the risk the offender would present to the community, to the victim, or to persons of similar age and circumstances as the victim," and (6) "the victim's opinion whether the offender should receive a [SSOSA]."  RCW 9.94A.670(4).  The sentencing court must give "great weight" to the victim's opinion.  Id.

Darby argues that the trial court abused its discretion by denying his request for a SSOSA because it "misapprehended the relevant charges," which

---

[4] "Washington courts have only specified the defendant's race, sex, or religion as impermissible bases for a court's denial of a nonstandard sentence."  Osman, 157 Wn.2d at 482 n.8.

caused it to misinterpret his amenability to treatment and minimize the victims' "support" for a SSOSA. According to Darby, the trial court mistakenly believed that Darby was convicted of forcible rape and penalized him for not admitting to "doing something he was not charged with doing, and was not convicted of doing."[5]

To support his argument, Darby points to the court's comment that "[h]e does not report committing rape or having used force in a sexual encounter which is in opposition to the statement of the victim which is she gave up fighting." But that comment does not suggest that the court mistakenly believed the State charged and Darby pleaded guilty to forcible rape. Rather, it refers to L.D.'s statement that Darby repeatedly raped her for several years and that eventually, she quit fighting him. Darby cites no authority that a sentencing court must look to conduct in only charged offenses when considering whether an offender is amenable to treatment. " 'Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.' " City of Seattle v. Levesque, 12 Wn. App. 2d 687, 697, 460 P.3d 205 (quoting DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)), review denied, 195 Wn.2d 1031, 468 P.3d 621 (2020).

---

[5] Citing State v. Grayson, 154 Wn.2d 333, 338, 111 P.3d 1183 (2005), the State argues that Darby's argument "is not reviewable on appeal because he challenges the sentence imposed, not the procedure by which it was imposed." Darby argues that "[t]he court's rejection of the recommended SSOSA for these untenable reasons constitutes a failure to consider meaningfully Mr. Darby's alternative sentence and requires remand for a new hearing." As much as Darby's assignments of error may relate to facts unsupported by the record or mistakes of law, we choose to address his claims on their merits.

And the treatment provider shared the court's concern. The evaluation states that "[a] person's behavior is governed by their belief system and learning to control deviant sexual behavior is seriously affected by what one believes about how the offense behavior occurred." In Darby's case, his behavior shows "numerous sexual 'thinking errors' which he uses to help him explain the sexual behavior that occurred, i.e., he did not plan it, it just happened, the person wanted it, etc." The evaluator concludes that Darby's "explanations keep him from accepting full responsibility for his actions."

Nor did the court minimize the victims' support for the SSOSA. In her DOC interview, L.D.'s mother said that L.D. was " 'terrified' " of running into Darby in the community, and that she " 'only agreed to the SSOSA because of . . . the high level of supervision for [Darby], and the lifetime protection order for my daughter.' " And in the Victim Impact Statement, she stated that "while there is disappointment with the SOSA program, I am in agreement with it due to the restrictions that he will be required to follow for the rest of his life." The trial court accurately characterized L.D.'s mother's support as "tepid" and "reluctant[ ]" in its oral ruling.[6] And the record supports the court's comment that it gave "great weight" to her recommendation.

We conclude that the court did not abuse its discretion by denying Darby's request for a SSOSA.

---

[6] The court also accurately described the State's support of the SSOSA as "tepid" and "[p]erhaps even begrudging."

<u>Voluntary Plea</u>

Darby argues that his plea was not voluntary because the plea agreement "misadvised him of the direct consequences of the plea" to second degree child molestation. We disagree.

Due process requires that a guilty plea be knowing, intelligent, and voluntary. <u>State v. Mendoza</u>, 157 Wn.2d 582, 587, 141 P.3d 49 (2006); <u>see</u> <u>also</u> CrR 4.2(d). To make a knowing and intelligent plea, a defendant must have a correct understanding of the charges and consequences of pleading guilty. <u>In re</u> <u>Pers. Restraint of Quinn</u>, 154 Wn. App. 816, 835, 226 P.3d 208 (2010); <u>see</u> <u>also</u> <u>State v. Wakefield</u>, 130 Wn.2d 464, 472, 925 P.2d 183 (1996). The imposition of mandatory community placement or community custody is a direct consequence of a guilty plea. <u>State v. Turley</u>, 149 Wn.2d 395, 399, 69 P.3d 338 (2003); <u>Quinn</u>, 154 Wn. App. at 836. A guilty plea is involuntary " 'when based on misinformation regarding a direct consequence on the plea, regardless of whether the actual sentencing range is lower or higher than anticipated.' " <u>Quinn</u>, 154 Wn. App. at 838 (quoting <u>Mendoza</u>, 157 Wn.2d at 591). So a defendant need not show that misinformation affected his decision to plead guilty. <u>State v.</u> <u>Smith</u>, 137 Wn. App. 431, 437-38, 153 P.3d 898 (2007). Still, the defendant must establish that the erroneous sentencing provision represents " 'a definite, immediate and largely automatic effect on . . . the defendant's punishment.' " <u>Id.</u> at 438[7] (quoting <u>Mendoza</u>, 157 Wn.2d at 588).

---

[7] Alteration in original.

9

In Smith, the defendant pleaded guilty to forgery and unlawful possession of payment instruments (UPPI). 137 Wn. App. at 435. The defendant's plea agreement advised him correctly that the standard sentence range for the forgery was 14 to 18 months. Id. But it incorrectly advised him that the range for the UPPI was 0 to 12 months. Id. The correct standard range was 14 to 18 months. Id. The defendant moved to withdraw his guilty plea, arguing it was involuntary because the State misadvised him of the direct consequences. Id. The trial court denied his motion to withdraw the plea. Id.

Division of Two of our court affirmed. Smith, 137 Wn. App. at 438. It reasoned the "defendant must establish that the unexpected sentence provision was a direct consequence of his guilty plea; one that represents 'a definite, immediate and largely automatic effect on . . . the defendant's punishment.' " Id.[8] (quoting Mendoza, 157 Wn.2d at 588). The court found that the defendant could not show the misinformation about his standard range on the UPPI affected his punishment because the standard range for the forgery conviction was also 14 to 18 months, and the sentences ran concurrently. Id. Because the direct consequence of the defendant's plea was a 14- to 18-month term of confinement despite the error on the plea form, the State did not misadvise the defendant about a direct consequence of his plea. Id.

Darby's plea form advised him that he faced a lifetime of community custody for the second degree child molestation conviction. But RCW 9.94A.701(1)(a) provides for a maximum of 36 months of community custody for

---

[8] Alteration in original.

that sex offense. Still, his plea form correctly advised Darby that he faced a lifetime term of community custody as result of the first degree child molestation conviction. And the terms of community custody ran concurrently. So, like the defendant in Smith, Darby's plea form did not misadvise him about a direct consequence off his plea because he still must serve lifetime community custody, despite the error.[9]

Supervision Fees

Darby challenges the trial court's imposition of discretionary DOC supervision fees despite the trial court's finding that he is indigent and its order to waive all nonmandatory legal financial obligations (LFOs). The State concedes and agrees that the court should strike the fees.

The trial court determined that Darby was indigent and waived all nonmandatory LFOs. But the judgment and sentence contained preprinted language requiring Darby to "pay supervision fees as determined by DOC." "[B]ecause 'supervision fees are waivable by the trial court, they are discretionary LFOs.'" State v. Bowman, 198 Wn.2d 609, 629, 498 P.3d 478 (2021) (quoting State v. Dillon, 12 Wn. App. 2d 133, 152, 456 P.3d 1199, review denied, 195 Wn.2d 1022, 464 P.3d 198 (2020)). We remand to strike the fees from the judgment and sentence. Bowman, 198 Wn.2d at 629.

---

[9] Darby argues that Smith is distinguishable because "[l]ifetime community custody on two cases would make it harder for a person to gain parole." But he offers no authority to support his argument. We assume that a party who fails to provide relevant authorities has conducted a diligent search and found none. Levesque, 12 Wn. App. 2d at 697.

We affirm Darby's convictions but remand to strike the discretionary supervision fees.

Brennan, J

WE CONCUR:

Díaz, J.