IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

STATE OF WASHINGTON,      )    No. 74344-9-I
                              )
            Respondent,  )
                              )
       v.                 )    UNPUBLISHED OPINION
                              )
BRODERICK RAY YOUNG,      )
                              )
            Appellant.    )    FILED: June 5, 2017

SCHINDLER, J. — Broderick Ray Young appeals denial of the motion to withdraw his guilty plea. Because the record supports the determination that defense counsel provided effective assistance of counsel and Young knowingly, intelligently, and voluntarily entered the plea of guilty, we affirm.

FACTS

On July 19, 2011, Broderick Ray Young attacked 63-year-old D.H. in the kitchen of her home. Young was naked and attempted to pull D.H.'s pants down. Young told D.H., " 'You'll like this.' " D.H. fought back and pushed him into a cabinet. Young ran out the back door. D.H. called 911. Police arrested Young a short distance from the house.

The State charged Young with attempted rape in the first degree in violation of RCW 9A.44.040 and RCW 9A.28.020, count I; and burglary in the first degree in violation of RCW 9A.52.020, count II.

On July 28, 2011, the court ordered Young committed to Western State Hospital (WSH) for a competency evaluation. The September 19, 2011 WSH forensic psychological report concluded Young "appeared to be psychiatrically stable," "demonstrated an accurate understanding of the charges against him," and understood the legal consequences of pleading guilty.

> Mr. Young appeared to be psychiatrically stable, with no evidence of psychosis, mood instability, or cognitive impairment. He demonstrated an accurate understanding of the charges against him and the possibility that he potentially faces a prison sentence if convicted. He demonstrated an accurate understanding of the roles of the major courtroom participants as well as the meaning and possible legal outcomes of his basic plea options. He was cooperative, pleasant, and able to remain focused during the interview. He demonstrated the capacity to provide relevant answers to stand competency interview questions as well as the capacity to learn new legally relevant information.

The court found Young competent to stand trial.

On March 2, 2012, the court ordered Young committed to WSH for another competency evaluation. The April 13, 2012 WSH forensic psychological report states Young is competent and has a "good understanding of court proceedings"—"Mr. Young has the capacity to understand the nature of the proceedings against him, and has the capacity to assist in his own defense." On April 26, the court found Young competent to stand trial.

On May 24, Young pleaded guilty as charged. The "Statement of Defendant on Plea of Guilty to Sex Offense" states the maximum term for the charge of attempted

2

rape in the first degree and burglary in the first degree is "[l]ife" and the "judge will impose a maximum term of confinement consisting of the statutory maximum sentence."

In the Statement of Defendant on Plea of Guilty to Sex Offense, Young describes in his "own words" why he is guilty of the charged crimes.

> The judge has asked me to state what I did in my own words that makes me guilty of this crime.
> This is my statement: Count I: Attempted rape first degree: On or about July 19, 2011, in Skagit County, WA, with intent to commit rape in the first degree, the elements of which are: to engage in sexual intercourse by forcible compulsion with D.H. after feloniously entering into the building where D.H. was situated, I did an act which was a substantial step towards the commission of that crime.
>
> Count II: First-degree burglary: On or about July 19, 2011, in Skagit County, WA, with intent to commit a crime against a person or property therein, I entered and remained unlawfully in the building of D.H., and while in the building I intentionally assaulted D.H. by means of attempting to forcibly engage in sexual intercourse with her.

Young also states that "[m]y lawyer has explained to me, and we have fully discussed" the plea agreement.

> My lawyer has explained to me, and we have fully discussed, all of the above paragraphs and the "Offender Registration" Attachment. I understand them all. I have been given a copy of this "Statement of Defendant on Plea of Guilty." I have no further questions to ask the judge.

During the hearing on the plea, Young told the court he understood that he was charged with attempted rape in the first degree and burglary in the first degree and that he was pleading guilty to those charges. Young told the court he discussed the plea agreement with his attorney, including "the maximum penalty and the standard range." Young said he did not have any questions about the plea agreement.

> Q.    Mr. Young, do you understand that you are charged with Attempted Rape in the First Degree and Burglary in the First Degree?
> A.    Yes.

3

Q.     And you're planning to plead guilty to those two charges this afternoon?
A.     Yes.
Q.     I have your guilty plea statement here in front of me. Have you gone over this document completely?
A.     Yes.
Q.     Do you have any questions about any part of it?
A.     No.
Q.     You've had a chance to discuss it with [defense counsel]?
A.     Yes.
. . . .
Q.     This statement goes over the maximum penalty and the standard range. Have you reviewed that?
A.     Yes.

The court found Young knowingly and voluntarily entered into the Statement of Defendant on Plea of Guilty to Sex Offense and was guilty as charged.

I find Mr. Young's guilty pleas to be knowing and voluntary, and based on the facts in the guilty plea statement, those facts supporting the charges, find Mr. Young guilty as charged in Count 1 and Count 2.

At the sentencing hearing on August 1, the court sentenced Young to the "minimum term" of 110.25 months to the "maximum term" of life on count I and 34 months on count II, concurrent with count I.

The judgment and sentence states the standard range sentence for attempted rape in the first degree is 83.25 to 110.25 months and the "[m]aximum [t]erm" is "[l]ife," and the standard range sentence for burglary in the first degree is 26 to 34 months and the "[m]aximum [t]erm" is "[l]ife."

Young appealed the judgment and sentence. Young argued the court improperly imposed the burglary antimerger statute and challenged community custody conditions. State v. Young, 184 Wn. App. 1033, 2014 WL 6436580, at *1 (2014). The State conceded the court improperly imposed some of the community custody conditions. Young, 2014 WL 6436580, at *2. We accepted the State's concession and remanded

to strike the community custody conditions but affirmed in all other respects. Young, 2014 WL 6436580, at *2, *3.

On February 11, 2015, Young filed a pro se motion to withdraw his guilty plea. Young states his attorney provided ineffective assistance of counsel. Young claimed his attorney "did not explain at the time until I signed the plea agreement that it was a[n] indeterminate sentence." Young also claimed "mental incapacitation." The court appointed an attorney to represent Young.

The attorney filed a motion to vacate the guilty plea and the judgment and sentence arguing Young did not understand that by pleading guilty, he would receive an indeterminate life sentence. Young argued his former attorney failed to advise him of the "true risks of indeterminate sentencing" and the court did not specifically address the indeterminate sentence during the colloquy.

Young and his former attorney testified at the hearing on the motion to withdraw the guilty plea. Young testified his former attorney did not discuss the indeterminate sentence with him. The former attorney testified that he discussed the indeterminate sentence with Young. The court admitted into evidence a number of documents, including e-mails and notes of discussions between the attorney and Young.

At the conclusion of the hearing, the court denied the motion to vacate the guilty plea. The court found the former attorney advised Young "of the risks of an indeterminate sentence" and the attorney's representation of Young did not fall below the "objective standard of reasonableness . . . with respect to an indeterminate sentence." Because the Statement of Defendant on Plea of Guilty clearly informed Young of the indeterminate sentence and Young told the court he reviewed the plea

agreement with his attorney and had no questions, the court rejected the argument that the colloquy was inadequate. The court found Young was aware that by pleading guilty, he would receive an indeterminate sentence.

> Based on what [defense counsel] has testified here and based on his notes, I'm quite satisfied that Mr. Young was aware of those consequences when entering his plea. And based on the language in the guilty plea itself I'm quite confident that Mr. Young is aware. [Defense counsel] testified that he went over that guilty plea, and that he read it to Mr. Young, and that he spent 20 minutes with him going over that plea before they appeared in court together and entered a plea, and that he didn't raise any issues with Mr. Young's competence or Mr. Young's failure to understand with the court at the time, and he would have done so had he had any of those concerns. So I just can't conclude that Mr. Young didn't know what he was doing and that he wasn't fully informed when he entered this guilty plea. So for those reasons the motion is denied.

Young appeals the order denying the motion to withdraw his guilty plea.

## ANALYSIS

Young contends the court erred in denying his motion to withdraw the guilty plea because his attorney provided ineffective assistance of counsel and he did not knowingly, intelligently, and voluntarily plead guilty.

Due process requires that a plea is knowing, voluntary, and intelligent. State v. Mendoza, 157 Wn.2d 582, 587, 141 P.3d 49 (2006). The court shall allow withdrawal of a plea only "to correct a manifest injustice." CrR 4.2(f). The due process standard is reflected in CrR 4.2(d). CrR 4.2(d) states a court "shall not accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea." CrR 7.8(b) allows for relief from judgment for "[m]istakes, inadvertence, surprise, excusable

neglect or irregularity in obtaining a judgment or order" and "[a]ny other reason justifying relief."

We review a denial of a motion to withdraw a guilty plea for abuse of discretion. State v. Zhao, 157 Wn.2d 188, 197, 137 P.3d 835 (2006). A court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. State v. Dobbs, 180 Wn.2d 1, 10, 320 P.3d 705 (2014). Denial of effective assistance of counsel may amount to manifest injustice. Mendoza, 157 Wn.2d at 587. A defendant may challenge the voluntariness of his guilty plea when he was misinformed about sentencing consequences, resulting in a more onerous sentence. Mendoza, 157 Wn.2d at 587.

Young contends his attorney did not meaningfully explain the indeterminate sentence. The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 684-85, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To demonstrate ineffective assistance of counsel, a defendant must show (1) counsel's representation was deficient, that it fell below an objective standard of reasonableness; and (2) prejudice. State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995); see also State v. Sandoval, 171 Wn.2d 163, 169, 249 P.3d 1015 (2011). If either prong of the test is not satisfied, our inquiry ends. State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

The record supports the court's determination that defense counsel's representation did not fall below the objective standard of reasonableness. The court found the attorney explained that once Young "had served the minimum that was

imposed by the judge[,] . . . the Indeterminate Sentence Review Board would review it again every five years and evaluate whether he could be released."

Defense counsel testified that his standard practice is to explain to his clients the potential for an indeterminate sentence.

> **Q.** . . . [D]o you have a specific recollection of how you describe an indeterminate sentence, the possibility with Mr. Young?
> **A.** I don't have a recollection of the specific conversations, no.
> **Q.** Do you have a standard practice of how you go about advising that potential to clients?
> **A.** Yes.
> **Q.** And what do you typically do?
> **A.** Typically the first time I meet with a client who is charged with an offense that carries an indeterminate sentencing I will advise them that if convicted then they are facing an indeterminate sentencing. In this case it would be a Class A Felony. I would advise the client that they may face a situation where they will never be released; that the way it works is that the Court will set the minimum sentence, which they must serve. Then once they serve the minimum sentence then an indeterminate sentencing review board will make a determination whether they should continue to be detained or not. And the process is that the board must decide whether they believe more likely than not if the defendant will commit a future sex offense if released. If they think more likely than not then they will do so, then they will be detained. And if they are sentenced it can be extended by up to three years at a time. And if there's an extension of the sentence then further at a later date at the end of an extended sentence it would again be reviewed with the same standards and then continue to be reviewed until such point which at that point the person is either released or they die.
> **Q.** So do you believe you had that same explanation with Mr. Young?
> **A.** I think I would have.

Defense counsel testified that he told Young he was facing an indeterminate sentence.

> **Q.** . . . Is it true that you never explained to Mr. Young the likelihood if he would spend the rest of his life in prison with an indeterminate sentence?
> **A.** If I understand your question you are asking me if I told him how likely I thought it would be that he would actually serve a life

8

Q.  sentence?

Q.  Yes.

A.  I think that would be true. I did not tell him how likely it would be, more along the lines of telling him that he was facing an indeterminate sentence.

The record also shows Young understood that he was facing an indeterminate sentence. On October 25, 2011, defense counsel noted that Young "[w]ants to take indeterminate sentence away." The April 13, 2012 WSH forensic psychological report stated, "When asked how long he could be sentenced if found guilty, [Young] replied, 'Indefinite length or life.' "

Further, in the May 9, 2012 e-mail from defense counsel to the prosecutor about the possibility of a plea agreement, defense counsel states, "Mr. Young very much wants a determinate sentence and is willing to serve additional time to get a determinate sentence." In the e-mail response, the prosecutor states:

> I have spent a considerable amount of time trying to figure out a good offer that would not involve a class A indeterminate sentence for your client and, frankly, I just can't. I have considered all the permutations of the burglaries, assaults, sex crimes, sexual motivation enhancements, and even kidnapping, but none result in an appropriate resolution that a) would result in his imprisonment for at least the ten years that is the current top of his range with his current charges, b) his being a registered sex offender, and c) are charges appropriate to the situation.

Defense counsel told the prosecutor that Young should be able to avoid the indeterminate sentence but agreed to discuss the offer with Young.

> I feel [Young] should "get around" the indeterminate life sentence because he is less culpable than others who commit sex offenses, and because he should not be treated the same as someone who completed the offense. . . . However, if this is the best offer you are inclined to make (with victim input), I'll communicate it to Mr. Young. I don't know that I'll be able to do so today.

9

Young also contends defense counsel provided ineffective assistance of counsel by failing to take into account his "mental illness." The record does not support the assertion that Young was suffering from mental illness when he entered into the plea agreement. The April 13, 2012 WSH forensic report found Young was competent to stand trial and demonstrated a "good understanding" of the court proceedings.

> Mr. Young demonstrated a good understanding of court proceedings. His thought process regarding the legal system was rational and goal-directed. He did not evidence any bizarre or delusional beliefs regarding the court procedures or personnel. Mr. Young did not appear to have any difficulty attending to the questions asked and he was able to communicate effectively with the examiner. Therefore, based on his current presentation, it is my opinion that Mr. Young has the capacity to understand the nature of the proceedings against him, and has the capacity to assist in his own defense.

Young also contends his defense counsel he did not explain the State's threat to seek an exceptional sentence was "illusory." The record does not support his argument.

Defense counsel testified that he advised Young about the State's threat to seek an exceptional sentence and that it was "realistic."

> Q.   And part of that threat — did you advise him that was a realistic threat?
> A.   I think what I would have advised him — I don't have a specific recollection of our conversations. But what I believe I would have advised him of is what the threat was, the legal basis for the threat was and the actual basis for the threat was what the consequences could be if a jury found aggravating circumstances.

Consistent with the e-mails from the prosecutor, defense counsel testified that he advised Young the State would likely prevail in seeking an exceptional sentence for a sexual motivation enhancement.

> Q.   Did you believe that to be a viable threat based on the facts of the case?

A.   I believed that the prosecutor likely would have, in fact, sought the exceptional sentence that she had threatened to do, so if that's the question.

Q.   My question is did you think the State would be successful in continuing (indistinguishable)?

A.   Well, with regard to the sexual motivation enhancement or on the burglary I think that's something that likely could have been successful. . . . I'm not recalling right off the top of my head, I think it would be sexual motivation and an enhancement on the Burg[lary] 1. And I believe that that's something the State likely could have prevailed upon.

The record supports the court's finding that the State's threat of an exceptional sentence "actually happened," that it was not "an empty threat," and it would have raised the mandatory minimum sentence. The court ruled, in pertinent part:

> With respect to the threat for the exceptional sentence upward by the State there is no doubt based on the records that that actually happened. [The prosecutor] sent an email from her office to [defense counsel] saying that if Mr. Young did not plead guilty as charged she was going to file [an] information charging aggravating factors that she would use as a basis for a request for an exceptional sentence upward. Now, for some reason I don't understand, Mr. Young takes the position that [defense counsel] should have told him that that was an empty threat. I can't imagine that the objective standard of reasonable conduct for a defense attorney would be to tell the client that that threat by the prosecutor was an empty threat. Because in this particular case I'm quite sure it wasn't an empty threat. I'm sure [the prosecutor] would have followed through with following those aggravating factors if she would have submitted them to the jury. And had the jury found them the judge would have had a basis to impose an exceptional sentence upward. Had that happened Mr. Young wouldn't have been eligible for an Indeterminate Sentence Review Board hearing for even longer than he currently is. His consequences would have been more dire than they are at this point in time. So there certainly was reason for [defense counsel] to explore that with Mr. Young and explain what the dangers were, to tell him that the exceptional sentence would be requested by the State and that he could be looking at more time before he got to the Indeterminate Sentence Review Board.

11

Young also claims the failure to interview the victim was ineffective. The record supports the court's finding that defense counsel was not ineffective in deciding not to interview the victim. The court's oral findings state, in pertinent part:

> With respect to [former defense counsel's] failure to interview the witness, obviously interviewing witnesses is an important part of defending in a criminal case. But in order to rise to the level of ineffective assistance I have to have something that tells me that the outcome would have been different had he done so. In this case I would have expected to see an interview done by [defense counsel] of the victim here saying: Well, if [former defense counsel] had come talk to me here's what I would have said, and this would have pulled the rug out from the prosecution. I don't have that. Quite frankly I don't think I have it. It probably doesn't exist and it wouldn't have helped.
> This is a victim whose statement was very strong when she reported this. And her description of the events to the officers was pretty strong. And I can't imagine that she was going to back off if anything had they interviewed her.

In sum, the record supports the court's conclusion that the representation of defense counsel did not fall below an objective standard.

Young contends the language of the plea indicates his "actual confinement" is limited to the standard range. But the court found the plea accurately informed Young that he would receive an indeterminate sentence if he pleaded guilty. The court's oral findings state, in pertinent part:

> [I]n the guilty plea statement itself, which was reviewed at the time of the entry of the guilty plea there is a paragraph on page 3 that talks about the indeterminate sentence. And it describes what happens from these kinds of offenses. The judge will impose a maximum term of confinement consisting of the statutory maximum sentence of the offense and a minimum term of confinement. The minimum term of confinement that is imposed may be increased by the Indeterminate Sentence Review Board if the board determines by a preponderance of the evidence that it is more likely than not that I will commit sex offenses if released from custody.
> The language in that guilty plea statement may not be as plane [sic] as you might like, but the fact of the matter is that it's in there.

The language of the Statement of Defendant on Plea of Guilty supports the court's finding. It states the judge will impose the "statutory maximum sentence." The Statement of Defendant on Plea of Guilty states, in pertinent part:

> Sentencing under RCW 9.94A.507: If this offense is any of the offenses listed . . . below, the judge will impose a maximum term of confinement consisting of the statutory maximum sentence of the offense and a minimum term of confinement either within the standard range for the offense or outside the standard range if an exceptional sentence is appropriate. The minimum term of confinement that is imposed may be increased by the Indeterminate Sentence Review Board if the Board determines by a preponderance of the evidence that it is more likely than not that I will commit sex offenses if released from custody.

The Statement of Defendant on Plea of Guilty also states the "maximum term" and fine for attempted rape in the first degree and burglary in the first degree as "[l]ife & $50,000."

Young contends his guilty plea was not knowing, intelligent, or voluntary because the court did not explicitly address the indeterminate sentence during the colloquy. The court considered and rejected this argument. The court found Young knowingly, intelligently, and voluntarily pleaded guilty.

> [W]ith respect to the colloquy at the time of the plea[,] . . . I asked Mr. Young if he's gone over the guilty plea completely, if he has any questions about any part of it, if he's had a chance to discuss it with his attorney. And in response to all three of those questions Mr. Young said yes.[1]
>
> . . . .
>
> . . . The guilty plea statement does contain the language.

The record shows the court did not misinform Young of the consequences of pleading guilty and he knowingly, intelligently, and voluntarily entered the plea. As the court notes, the Statement of Defendant on Plea of Guilty states the maximum term for

---

[1] During the plea colloquy when the judge asked Young, "Do you have any questions about any part of [the plea agreement]," Young replied, "No."

the charged crimes is "[l]ife." And during the hearing, the court confirmed that Young reviewed the Statement of Defendant on Plea of Guilty, discussed it with counsel, and did not have any questions.

We affirm denial of the motion to withdraw the guilty plea, and affirm.

WE CONCUR: