**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53150-0-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| BOYD K. STACY, | |
| Appellant. | |

WORSWICK, J. — Boyd Stacy pleaded guilty to attempting to elude a pursuing police vehicle, and a jury found him guilty of first degree taking of a motor vehicle without permission. Stacy appeals arguing (1) his guilty plea was not knowing or voluntary because his plea form erroneously listed a term of community custody equal to the standard sentence range; (2) the trial court violated his right to present a defense when it excluded his defense witness; (3) the trial court erred by admitting testimony that implied Stacy had previously been in prison; (4) he received ineffective assistance of counsel based on counsel's failure to seek a jury instruction on good faith claim of title; (5) the cumulative impact of the errors deprived him of a fair trial; (6) the judgment and sentence should be amended to clarify that no community custody is imposed, and (7) his offender score improperly included convictions for possession of an uncontrolled substance.

We hold that Stacy is entitled to withdraw his guilty plea because he was misinformed as to a direct consequence of his plea. We further hold that the trial court violated Stacy's right to present a defense by excluding his defense witness and that error was not harmless.

No. 53150-0-II

Accordingly, we reverse Stacy's convictions, and we do not consider his other arguments. We reverse.

FACTS

In September 2018, a supervisor at Lincoln Creek Lumber noticed one of the store's work trucks was missing. The truck was a red and white 2005 Ford F-650 with a dump flatbed with Lincoln Creek Lumber logos on the sides of each door. The supervisor reviewed security video footage and saw a man get out of another vehicle and into the truck then drive off in the truck earlier that morning.

A few days later, employees at Lincoln Creek Lumber saw the truck backed into a driveway and contacted law enforcement. One officer responded and waited on the highway for a second officer to arrive. While the officer was waiting, the truck pulled out of the driveway and proceeded down the highway. The officer activated his emergency lights and sirens and attempted to stop the truck, but the truck continued down the highway at high speed. At one point the pursuit reached ninety-five miles per hour.

Another officer responded and attempted to stop the truck by deploying stop sticks across the highway but was unsuccessful. Eventually the truck stopped and the driver was arrested and identified as Boyd Stacy. The truck had an Oregon license plate affixed to the rear of the truck. The Oregon plate was registered to BKS Designs—a business registered to Stacy's address—and was affiliated with a 2004 Ford F-650. A Washington Department of Licensing search of the record for the vehicle's identification number showed that the truck was actually licensed in

2

No. 53150-0-II

Washington.  The truck was titled to Lincoln Creek Lumber and there was no record of the vehicle being sold or retitled.

The State charged Stacy with first degree taking of a motor vehicle without permission and attempting to elude a pursuing police vehicle.  In his omnibus response to the State, Stacy listed Jasmine Whitaker and Michael Eduardo as potential defense witnesses who would testify to seeing Stacy purchase the Ford F-650 in early September 2018.  Stacy was late to the first day of trial.  While waiting for Stacy to arrive, Stacy's attorney informed the court that the defense would be calling one witness—Michael Glasmann.

At the conclusion of voir dire, Stacy informed the trial court that he wished to plead guilty to the attempting to elude a pursuing police vehicle charge.  The statement of defendant on plea of guilty form, which was filled out by Stacy's attorney, showed the following consequences of his guilty plea:

6.  **In Considering the Consequences of My Guilty Plea, I Understand That:**

(a)  Each crime with which I am charged carries a maximum sentence, a fine, and a *Standard Sentence Range* as follows:

| COUNT NO. | OFFENDER SCORE | STANDARD RANGE ACTUAL CONFINEMENT (not including enhancements) | PLUS Enhancements* | COMMUNITY CUSTODY | MAXIMUM TERM AND FINE |
|---|---|---|---|---|---|
| II | 19 | 22-29 | Nor. | 22-29 | 5 years $10,000 Fine |
| 2 | | | | | |
| 3 | | | | | |

Clerks Papers (CP) at 9.  Notably, the form showed that the crime carried 22-29 months of community custody in addition to a 22-29 month standard range sentence.

3

During a colloquy on the guilty plea, the trial court confirmed that Stacy understood that the standard range of punishment for the conviction would be between 22 and 29 months. The trial court did not mention any community custody. After finding that Stacy fully understood his constitutional rights and voluntarily made a knowing and intelligent waiver of those rights, the trial court accepted Stacy's guilty plea.

After pleading guilty to attempting to elude a pursuing police vehicle, Stacy informed the trial court that a second defense witness, Whitaker, had "appeared," and requested permission from the trial court to call her as a witness. Report of Proceedings (RP) (Feb. 13, 2019) at 63-64. Stacy had been unable to locate Whitaker prior to trial. The trial court denied Stacy's request, explaining: "The problem [] is that we have selected the jury. . . . And all of the prospective jurors were provided the names of everyone who might testify so that they could indicate if they knew anyone. That opportunity has now gone." RP (Feb. 13, 2019) at 64. Stacy's defense counsel thanked the court and did not further object. Stacy attempted to object on his own, and the trial court reminded him that his defense counsel was responsible for speaking on his behalf. The State neither opposed nor supported Stacy calling the witness.

Stacy called Glasmann as a defense witness. Glasmann testified that Stacy had contacted him to look at a truck he intended to purchase. Glasmann recalled that it was a big flatbed diesel truck. Glasmann recommended Stacy purchase the vehicle. On cross-examination, the State asked Glasmann about his conviction for witness tampering in 2006. The State asked, "Witness tampering is a crime of dishonesty, isn't it [?]" RP (Feb. 13, 2019) at 161.

4

Glasmann testified that he thought buying the truck was a good idea for Stacy because "I buy and sell cars, I know [Stacy] does, that's how I met him a long time ago, and that's like a dream truck to have if you are in that kind of business." RP (Feb. 13, 2019) at 166. The State clarified, "You met him about 12 years ago because you both bought and sold cars; is that right?" RP (Feb. 13, 2019) at 166. When Glasmann confirmed that was correct, the State asked that the jury be excused. The State explained to the trial court that it intended to cross-examine Glasmann about the fact that he was incarcerated 12 years prior, which would imply that he met Stacy in prison. Stacy objected, but the trial court overruled the objection. When the jury returned, the State asked Glasmann "you said you met the defendant while car dealing about 12 years ago, weren't you in prison 12 years ago?" RP (Feb. 13, 2019) at 169-70. Glasmann responded, "Yes, I was in prison 12 years ago. That's where I met Mr. Stacy." RP (Feb. 13, 2019) at 170. Stacy did not object.

In closing, Stacy argued that he purchased the truck and did not know that it had been stolen. He pointed to the fact that he put his Oregon license plate on the truck and Glasmann's testimony as evidence that he thought Stacy had lawfully purchased the truck. The jury found Stacy guilty of first degree taking a motor vehicle without permission.

The trial court sentenced Stacy to an exceptional sentence based on the "free crimes aggravator"[1] for a total confinement period of 125 months. The trial court did not mention community custody in its oral sentencing.

Stacy appeals his convictions and sentence.

---

[1] RCW 9.94A.535(2)(c).

ANALYSIS

I. WITHDRAWAL OF GUILTY PLEA

Stacy first argues that he is entitled to withdraw his guilty plea to attempting to elude a pursuing police vehicle. He argues that he was misinformed that community custody would be imposed when his attorney mistakenly listed the standard range sentence term in the column intended for any community custody term. We agree.

"Due process requires that a defendant's guilty plea be knowing, voluntary, and intelligent." *State v. Mendoza*, 157 Wn.2d 582, 587, 141 P.3d 49 (2006). A defendant does not enter a guilty plea knowingly or voluntarily when it is based on misinformation about the sentencing consequences. *State v. Miller*, 110 Wn.2d 528, 531, 756 P.2d 122 (1988). Although a defendant need not be informed of all potential consequences of a plea, they must be advised of all direct consequences for the plea to be voluntary. *State v. Ross*, 129 Wn.2d 279, 284, 916 P.2d 405 (1996).

"[A] sentencing consequence is direct when 'the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment.'" *Mendoza*, 157 Wn.2d at 588 (quoting *Ross*, 129 Wn.2d at 284 (internal quotations omitted)). Community custody is a direct consequence of a guilty plea because it "affects the punishment flowing immediately from the guilty plea" and "imposes significant restrictions on a defendant's constitutional freedoms." *Ross*, 129 Wn.2d at 285-86 (quoting *State v. Barton*, 93 Wn.2d 301, 305, 609 P.2d 1353 (1980)). "A guilty plea may be deemed involuntary when based on misinformation regarding a direct

consequence on the plea, regardless of whether the actual sentencing range is lower or higher than anticipated." *Mendoza*, 157 Wn.2d at 591.

Here, Stacy was informed that he would face 22-29 months of mandatory community custody. But attempting to elude a pursuing police vehicle is not a crime subject to community custody.[2] As a result, Stacy was misinformed as to a direct sentencing consequence of his guilty plea.

In *Mendoza*, our Supreme Court held that a guilty plea may be deemed involuntary based on misinformation regarding a direct consequence of the plea, such as the standard range sentence, even when the actual sentencing range is lower than anticipated. 157 Wn.2d at 591. The court emphasized its decision not to engage in a subjective inquiry into the defendant's risk calculation and the reasons underlying their decision to accept a plea bargain. *Mendoza*, 157 Wn.2d at 590-91.

Likewise here, we will not speculate as to how the incorrect community custody language in the plea form affected Stacy's decision to plead guilty. Stacy was misinformed about a direct sentencing consequence, and he is entitled to withdraw his plea.

## II. RIGHT TO PRESENT A DEFENSE

Stacy also argues that the trial court violated his right to present a defense by denying his request to call Whitaker to testify. We agree.

Criminal defendants have a constitutional right to present a defense. U.S. CONST. amends. V, VI, XIV; WASH. CONST. art. I, §§ 3, 22; *Chambers v. Mississippi*, 410 U.S. 284, 294,

---

[2] RCW 9.94A.701; RCW 9.94A.030(47); RCW 9.94A.030(56); RCW 9.94A.411(2).

7

93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). "Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers*, 410 U.S. at 302. "Washington defines the right to present witnesses as a right to present material and relevant testimony." *State v. Roberts*, 80 Wn. App. 342, 350-51, 908 P.2d 892 (1996).

Violations of the right to present a defense are subject to constitutional harmless error analysis. *State v. Orn*, 197 Wn.2d 343, 359, 482 P.3d 913 (2021). A constitutional error is presumed prejudicial, and the State bears the burden of showing beyond a reasonable doubt that the jury would have reached the same verdict without the error. *Orn*, 197 Wn.2d at 359; *State v. Chambers*, 197 Wn. App. 96, 128, 387 P.3d 1108 (2016).

A.      *Preservation of the Issue and Invited Error*

As an initial matter, the State argues that Stacy failed to preserve this issue for appeal by not objecting to the trial court's ruling excluding Whitaker. We disagree. Stacy specifically requested that the trial court allow him to call Whitaker as a witness, pointing out that he had provided Whitaker's name to the State in the omnibus report, and suggesting the State be allowed time to interview Whitaker beforehand. Stacy was not obligated to further object after the trial court denied his request.

Additionally, the State contends that to the extent the trial court erred by excluding Whitaker, Stacy invited the error by disclosing her late. The invited error doctrine "prohibits a party from setting up an error at trial and them [sic] complaining of it on appeal." *State v. Pam*, 101 Wn.2d 507, 511, 680 P.2d 762 (1984). For example, the invited error doctrine prohibits a defendant from arguing on appeal that jury instructions he proposed were improper. *State v.*

*Henderson*, 114 Wn.2d 867, 868, 792 P.2d 514 (1990). Here, Stacy requested that he be able to call Whitaker to testify, and the trial court ruled that he could not. This is not invited error.

B.    *Witness Exclusion*

The trial court did not articulate its basis for ruling that Stacy could not call Whitaker as a defense witness other than that jury voir dire was already complete. Although not cited on the record by the trial court, Grays Harbor County Superior Court Local Criminal Rule 6.1 provides, "Counsel shall report to the assigned Trial Judge at least one-half hour before the scheduled beginning of a jury trial and provide the Judge with a written list of the names and city of residence of witnesses and general voir dire questions to be asked of the jury." LCrR 6.1 further provides that if a party fails to comply with the local rules, the trial court "may impose monetary sanctions, or enter such other orders, as the Court deems appropriate to address and remedy the failure to comply." Assuming the trial court based its decision on LCrR 6.1, we consider whether the trial court erred by excluding Whitaker as a sanction for Stacy's failure to comply with the local rule.

No Washington case has considered a trial court's decision to exclude a defense witness as a sanction for the failure to comply with LCrR 6.1. The framework for reviewing a trial court's decision to exclude witnesses as a sanction for discovery violations under CrR 4.7 is instructive.[3] Like LCrR 6.1, CrR 4.7(h)(7)(i) authorizes the trial court to "enter such other order

---

[3] CrR 4.7 requires the names, addresses, and substance of any oral statements of intended witnesses be provided to opposing counsel no later than the omnibus hearing. Stacy provided Whitaker's information to the State in its omnibus report. The State does not contend that any violation of CrR 4.7 occurred.

as it deems just under the circumstances" in the event a party fails to comply with the discovery rules. Minor violations of discovery rules are appropriately remedied by producing the evidence and ensuring the nonviolating party has sufficient time to review. *State v. Hutchinson*, 135 Wn.2d 863, 881, 959 P.2d 1061 (1998). "Excluding evidence is an 'extraordinary remedy' . . . that 'should be applied narrowly.'" *State v. Venegas*, 155 Wn. App. 507, 521, 228 P.3d 813 (2010) (quoting *Hutchinson*, 135 Wn.2d at 882).

Although *Hutchinson* addressed sanctions for a violation of CrR 4.7, the considerations are equally applicable here. Thus, we hold that when considering the extraordinary remedy of excluding witnesses or other evidence as a sanction for violation of a local rule requiring disclosure of witness identities, a trial court should consider four factors identified in *Hutchinson*: "(1) the effectiveness of less severe sanctions; (2) the impact of witness preclusion on the evidence at trial and the outcome of the case; (3) the extent to which the witness's testimony will surprise or prejudice the State; and (4) whether the violation was willful or in bad faith." *Venegas*, 155 Wn. App. at 521-22 (citing *Hutchinson*, 135 Wn.2d 882-83). Here, the trial court did not weigh any of these factors. This was clear error.

Moreover, our review of the four factors suggests that the extraordinary remedy of exclusion of a defense witness was not warranted. First, nothing indicates that a less severe sanction such as a brief continuance would not have been effective. Stacy suggested allowing the State time to interview Whitaker. The trial court could also have asked the jury if anyone recognized Whitaker's name. It is entirely possible that no jurors would have been conflicted by the addition of Whitaker as a witness.

10

Second, the impact of excluding Whitaker on the evidence was significant. Whitaker's testimony was relevant and material. The State argues that Whitaker's testimony that she witnessed Stacy purchase the truck would have been cumulative because of Glasmann's testimony. However, Glasmann's testimony was severely undercut by credibility concerns due to his previous conviction and incarceration for witness tampering. Whitaker could have corroborated Glasmann's testimony and supported Stacy's defense theory without Glasmann's significant credibility shortcomings.

Third, there was little risk of surprise or prejudice to the State. Stacy informed the State that Whitaker was a potential defense witness prior to the omnibus hearing. When Stacy sought to call Whitaker as a defense witness, the State did not object or otherwise make a record of any prejudice or surprise.

Fourth, there is nothing in the record to suggest that Stacy's late decision to call Whitaker was willful or done in bad faith. Stacy informed the State that he planned to call Whitaker as a witness in his omnibus report, but abandoned that plan when he was unable to locate Whitaker. When she appeared on the first day of trial, Stacy notified the trial court at the earliest opportunity, explained the circumstances, and suggested giving the State time to speak to her.

None of the four factors weigh in favor of excluding the witness. We hold that the trial court erred by excluding Stacy's defense witness without considering any of the *Hutchinson* factors, particularly where review of those factors shows that the extraordinary sanction of exclusion was not warranted. The trial court's ruling prevented Stacy from presenting relevant

11

and material testimony and thus violated his right to present a defense. *Roberts*, 80 Wn. App. at 350-51.

C.      *Constitutional Harmless Error*

We next determine whether the trial court's error was harmless beyond a reasonable doubt. *Orn*, 197 Wn.2d at 359. We hold that it was not.

In order to find Stacy guilty of first degree taking a motor vehicle without permission, the jury had to find that Stacy knowingly took the vehicle without the permission of the owner. Stacy's defense theory was that he had purchased the vehicle. Although Glasmann testified consistently with Stacy's theory, his testimony was discredited by his conviction for a crime of dishonesty.

The State has not shown beyond a reasonable doubt that the jury would have reached the same verdict without the trial court's error. *Orn*, 197 Wn.2d at 359. It is possible the jury may have had a reasonable doubt whether Stacy had knowingly took the truck without permission of its owner if it had heard Whitaker's testimony that Stacy purchased the truck. The State cannot prove that Whitaker would not have been a reliable witness providing more credible testimony than Glasmann. Constitutional harmless error is a demanding standard, and the State cannot meet it here.

The trial court violated Stacy's right to present a defense when it excluded his relevant and material defense witness as a sanction for a violation of a local rule without considering the four *Hutchinson* factors, and this constitutional error was not harmless beyond a reasonable doubt.

No. 53150-0-II

Accordingly, we hold that Stacy was misinformed as to a direct consequence of his plea and that the trial court violated Stacy's right to present a defense by excluding his defense witness and that error was not harmless. We reverse Stacy's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Maxa, J.

_____
Cruser, J.

13