# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  50398-1-II |
| Respondent, | |
| v. | |
| CLIFF ALAN JONES, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J.  —  Cliff A. Jones appeals his second degree child molestation conviction and sentence.  Jones argues that (1) the sentencing condition prohibiting him from having contact with his minor children deprives him of his fundamental right to parent, (2) the superior court miscalculated his offender score which rendered his guilty plea involuntary, and (3) the deoxyribonucleic acid (DNA) database and criminal filing fee legal financial obligations (LFOs) should be stricken.  In his statement of additional grounds (SAG), Jones also asserts violations of his right to be present and his right to a speedy trial, ineffective assistance of counsel, and structural error created by a biased judge.

We affirm his convictions and sentence.  But we strike and remand for consideration consistent with this opinion the sentencing condition prohibiting Jones from contact with his minor children.  We also remand for the superior court to strike the DNA fee, criminal filing fee, and interest on nonrestitution LFOs.

FACTS

I. BACKGROUND FACTS – CRAIGSLIST CASE

On December 15, 2015, Jones responded to a Craiglist ad posted by the Missing and Exploited Children's Task Force as part of their investigation of sex crimes against children. The Craiglist ad described a single mom with three children for "'family fun.'" Clerk's Papers (CP) at 67. Detective Sergeant Rodriguez received a responsive e-mail from "'cliff jones.'" CP at 67.

Their communication turned to text messaging. Acting as the mother from the ad, Detective Sergeant Rodriguez told Jones that the children were 13, 11, and 8, with the two youngest being girls. Jones explained in some detail the sex acts that he would like to watch and perform with the mother and children. Jones was sent a photo of what he believed was the 11-year-old and he sent a photo back of himself. The conversation continued and he stated that he wanted to engage in sex acts with the "mother" and her daughters but expressed that he was "freighted [sic] of legal problems." CP at 68.

The text conversation led to a phone call. Jones said he was interested in the 8-year-old and the 11-year-old. Jones asked if they had been with other men. The "mother" said that they had not because the "mother" was looking for the perfect person, and Jones said, "'Hopefully I can be that person.'" CP at 68. He said that he "'got away with lots of sexual relations with little girls when I was, before I got caught because my wife had a little sister that really liked me and we would always sneak away and do things together.'" CP at 68. Jones stated the youngest he had been with was 5 years old. The "mother" said she would be in the room to make sure everything is okay, and Jones responded, "'That is, oh yeah. That's, that's an even bigger turn on.'" CP at 68.

On December 23, the State charged Jones with two counts of attempted first degree rape of a child for the Craigslist case, cause number 15-1-05135-2. The State later filed an amended information and added two counts of attempted first degree child molestation and one count of communication with a minor for immoral purposes. At the time the charges were originally filed, Jones was out on bail pending two counts of first degree child molestation for cause number 15-1-02630-7, referred to herein as "H.W.'s case," using the child victim's initials.

## II. GUILTY PLEA

On March 8, 2017, Jones entered into a global plea agreement for the two separate cause numbers under *In re Personal Restraint of Barr*[1] to amended informations. For the Craigslist case, cause number 15-1-05135-2, Jones pleaded guilty to one count of second degree child molestation. For H.W.'s case, cause number 15-1-02630-7, Jones pleaded guilty to two counts of second degree child molestation and one count of second degree child assault. For the Craigslist case, the superior court "read the declaration of determination of probable cause, and I have reviewed the case carefully. There's a factual basis to support the original charges." Verbatim Report of Proceedings (VRP) (March 8, 2017) at 175.

---

[1] 102 Wn.2d 265, 684 P.2d 712 (1984).

The superior court stated that it also read the declaration of determination of probable cause for H.W.'s case and determined that there is a factual basis to support the original charges. Jones signed a statement of defendant on plea of guilty that said he gave up his "right to a speedy and public trial" and understood that his "right to appeal is limited." CP at 2-3.

### III. SENTENCING

On April 28, the superior court held a combined sentencing hearing for both cases. Jones filed a motion to withdraw his guilty plea, but his attorneys did not endorse it. The court struck Jones's motion and proceeded with sentencing.

Jones stipulated to an exceptional sentence under the two cause numbers. Jones also stipulated to his criminal history and an offender score of 11. This included a first degree child molestation conviction committed in 1998 (3 points) and a third degree domestic violence assault committed in 2000 (1 point). His convictions in H.W.'s case committed in 2015 included two counts of second degree child molestation (3 points *each*) and one count of second degree child assault (1 point). The following chart summarizes his criminal history:

2.2   CRIMINAL HISTORY (RCW 9.94A.525):

| | CRIME | DATE OF SENTENCE | SENTENCING COURT | DATE OF CRIME | A or J ADULT JUV | TYPE OF CRIME |
|---|---|---|---|---|---|---|
| 1 | NVOL | | PIERCE, WA | 08-26-1991 | A | MISD |
| 2 | NVOL | | PUYALLUP, WA | 09-20-1991 | A | MISD |
| 3 | POSS MARIJUANA | | PIERCE, WA | 06-06-1992 | A | MISD |
| 4 | FTA | | TACOMA, WA | 08-03-1992 | A | MISD |
| 5 | FTA | | PIERCE, WA | 08-31-1992 | A | MISD |
| 6 | FTA | | PIERCE, WA | 10-17-1992 | A | MISD |
| 7 | FTA | | TACOMA, WA | 10-27-1992 | A | MISD |
| 8 | FTA | | KITSAP, WA | 12-16-1992 | A | MISD |
| 9 | FTA | | KITSAP, WA | 03-07-1993 | A | MISD |
| 10 | DWLS 2 | | PORT ORCHARD, WA | 04-27-1993 | A | MISD |
| 11 | DV - ASSAULT | | TACOMA, WA | 08-01-1994 | A | MISD |
| 12 | DV - ASSAULT | | TACOMA, WA | 08-01-1994 | A | MISD |
| 13 | DWLS 3 | | PIERCE, WA | 09-16-1995 | A | MISD |
| 14 | DWLS 3 | | TACOMA, WA | 11-06-1995 | A | MISD |
| 15 | DV - ASSAULT | | TACOMA, WA | 01-12-1996 | A | MISD |
| 16 | DV - DEST OF PROPERTY | | TACOMA, WA | 01-12-1996 | A | MISD |
| 17 | RECKLESS DRIVING | | TACOMA, WA | 06-18-1996 | A | MISD |
| 18 | NVOL | | TACOMA, WA | 06-18-1996 | A | MISD |
| 19 | DWLS 3 | | LAKEWOOD, WA | 06-16-1997 | A | MISD |
| 20 | DV - ASSAULT 4 | | LAKEWOOD MUNI COURT | 07-19-1997 | A | MISD |
| 21 | RECK ENDANGERMENT | | LAKEWOOD, WA | 07-19-1997 | A | MISD |
| 22 | DV - THREATS TO HARM | | LAKEWOOD, WA | 07-19-1997 | A | MISD |
| 23 | COMM W/ MINOR-IMMORAL PURP | 12-15-2000 | KING, WA | 12-01-1998 | A | MISD |
| 24 | POSS DRUG PARA | | PIERCE, WA | 03-02-1999 | A | MISD |
| 25 | DWLS 3 | | PUYALLUP, WA | 05-19-1999 | A | MISD |
| 26 | MAL MISCHIEF 3 | | LAKEWOOD, WA | 06-01-2009 | A | MISD |
| 27 | CHILD MOLESTATION 1 | 09-22-2000 | KITSAP, WA | 11-08-1998 | A | NV |
| 28 | DV - ASSAULT 3 | 11-20-2000 | KITSAP, WA | 06-04-2000 | A | NV |
| 29 | 15-1-02630-7 CHILD MOLEST 2 | | PIERCE, WA | 01/01/15-04/02/15 | A | NV |
| 30 | 15-1-02630-7 CHILD MOLEST 2 | | PIERCE, WA | 01/01/15-04/02/15 | A | NV |
| 31 | 15-1-02630-7 ASLT CHILD 2 | | PIERCE, WA | 04/02/15 | A | V |

CP at 27.

Jones's plea of guilty for the Craigslist case acknowledged that he had an offender score of 9+ with a minimum range of 87 to 116 months, followed by 36 months of community custody and a maximum term of 10 years. He also acknowledged that the parties stipulated to an exceptional indeterminate sentence as part of the plea bargain. They agreed that for the Craigslist case, the prosecutor would recommend that Jones should serve an indeterminate sentence with a minimum term of 116 months to a statutory maximum term of 120 months consecutive to all other counts in the H.W. case. They also stipulated that Jones should serve the sentences imposed on

5

both cause numbers consecutively and that the prosecutor would recommend a total of "348 months to 360 months, followed by 120 months of community custody." CP at 9 (bold omitted).

Jones's judgment and sentence also reflects that he has an offender score of 11. Jones's criminal history does not show that he committed any crimes between 2000 and 2015.

The superior court imposed an exceptional sentence on Jones's cause numbers as stipulated by the parties. In the judgment and sentence for the Craigslist case, the superior court imposed for the second degree child molestation conviction an indeterminate sentence with a minimum term of 116 months to a maximum term of 120 months consecutive to all other counts. Jones is subject to community custody for any period that he is released from total confinement before the expiration of the maximum sentence. The findings of fact for the exceptional sentence states,

> This departure from the guidelines recognizes the defendant's pleas of guilt to four Class B felony offenses, a substantial prison sentence, a substantial period of community custody, offender treatment, registration as a sex offender, no contact with the victim, and it spares the victim from testifying in a trial. In exchange, the defendant is spared from two life sentences without the possibility of parole, had he been convicted of the original charges.

CP at 23.

Jones addressed the superior court:

> [M]y main concern is all this time get down is I'll be able to have some contact with my own children. I've never done any harm to them. There's no evidence of any harm towards them. And I would hope that you would find it in your heart that I at least be able to have some type of contact with them where I can write them and receive letters from them, pictures, and maybe even contacts in the prison with them.

VRP (Apr. 28, 2017) at 195. Defense counsel stated that if the prison censored Jones's mail, then counsel would later bring a motion that would allow Jones to write to his children. The State

objected to any kind of contact with minors "given his history, given the facts in these two cases." VRP (Apr. 28, 2017) at 196.

The court ordered that Jones was prohibited from contact with minors. The superior court imposed LFOs, including a $100 DNA database fee and a $200 criminal filing fee.

## ANALYSIS

### I. NO CONTACT WITH MINORS

Jones argues that the superior court's sentencing condition that prohibited him from contact with minors, including contact with his biological children, violated his fundamental constitutional right to parent. Because the record fails to show that the superior court properly exercised its discretion, we remand to the court.

### A. PRINCIPLES OF LAW

The Sentencing Reform Act of 1981, ch. 9.94A RCW, authorizes a superior court to "impose and enforce crime-related prohibitions and affirmative conditions." RCW 9.94A.505(9). Crime-related prohibitions are orders "prohibiting conduct that directly relates to the circumstances of the crime." RCW 9.94A.030(10). This includes no-contact orders. *State v. Armendariz*, 160 Wn.2d 106, 113, 156 P.3d 201 (2007).

We review the imposition of crime-related prohibitions under the abuse of discretion standard. *State v. Howard*, 182 Wn. App. 91, 100, 328 P.3d 969 (2014). A superior court abuses its discretion if it applies the wrong legal standard. *Howard*, 182 Wn. App. at 100.

"More careful review of sentencing conditions is required where those conditions interfere with a fundamental constitutional right." *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008). If a condition interferes with a fundamental right, it "must be reasonably necessary to accomplish

the essential needs of the State and public order." *Warren*, 165 Wn.2d at 32. Such conditions "must be narrowly drawn" and "[t]here must be no reasonable alternative way to achieve the State's interest." *Warren*, 165 Wn.2d at 34-35. However, although these conditions must be "narrowly drawn," we still review the imposition of such conditions for abuse of discretion. *Warren*, 165 Wn.2d at 33.

A parent has a fundamental constitutional right to the care, custody, and companionship of their children. *Warren*, 165 Wn.2d at 34. However, a court may impose a condition affecting a fundamental right to parent if it is reasonably necessary to prevent harm to a child. *Howard*, 182 Wn. App. at 101. "'Prevention of harm to children is a compelling state interest, and the State does have an obligation to intervene and protect a child when a parent's actions or decisions seriously conflict with the physical or mental health of the child.'" *Howard*, 182 Wn. App. at 101 (internal quotation marks omitted) (quoting *State v. Ancira*, 107 Wn. App. 650, 653-54, 27 P.3d 1246 (2001)). "Reviewing courts must analyze the scope and duration of no contact orders in light of the facts in the record." *Howard*, 182 Wn. App. at 101.

## B. REASONABLY NECESSARY

Jones argues that the State did not show that there was no reasonable alternative way to protect the State's interest in preventing harm to minors and he further argues that the no-contact order was not reasonably necessary. The State argues that based on the facts in the record, the superior court did not abuse its discretion and the condition was reasonably necessary. We agree with Jones.

In *In re Personal Restraint of Rainey*, our Supreme Court struck down a lifetime no-contact order prohibiting Rainey from all contact with his child when the sentencing court did not articulate

any reasonable necessity for the lifetime duration of that order. 168 Wn.2d 367, 381-82, 229 P.3d 686 (2010). Recognizing the "fact-specific nature of the inquiry," the court remanded to the trial court for resentencing so that the court could "address the parameters of the no-contact order under the 'reasonably necessary' standard." *Rainey*, 168 Wn.2d at 382.

The State argues that *Rainey* is factually distinguishable because here the superior court did not impose a lifetime no-contact order. The State's argument fails because even though a lifetime no-contact order was not at issue here, the parameters of a no-contact order affecting a fundamental right must still be addressed under the "reasonably necessary" standard. *Rainey*, 168 Wn.2d at 382.

Here, the superior court ordered Jones to have no contact with minors. Because the no-contact condition implicates Jones's fundamental right to the care, custody, and companionship of his minor children, "[t]he question is whether, on the facts of this case, prohibiting all contact with [his children], including indirect or supervised contact, is reasonably necessary to realize [a compelling State interest]." *Rainey*, 168 Wn.2d at 379. In order for the sentencing condition to be constitutionally valid, "[t]here must be no reasonable alternative way to achieve the State's interest." *Warren*, 165 Wn.2d at 34-35. The State contends that the condition prohibiting all contact with minors including indirect or supervised contact was reasonably necessary to protect Jones's children who were in the same class of persons that Jones victimized.[2]

However, here, in imposing the sentencing condition, the superior court set forth no explanation as to whether the no-contact condition was reasonably necessary to realize a

---

[2] The presentence investigation report states that Jones has two children five years of age and younger as of April 17, 2017.

compelling state interest. Moreover, although the State has a compelling interest in protecting children from harm, the State failed to demonstrate how prohibiting all contact between Jones and his minor children was reasonably necessary to effectuate that interest.

The record is void of any information showing that the superior court considered Jones's fundamental constitutional right to parent his children when it imposed the condition that Jones have no contact with minors. Thus, the record does not show that the court sensitively imposed the no-contact provision in a manner that was "reasonably necessary" to further the compelling interest of protecting children.

Accordingly, we strike the sentencing condition prohibiting Jones from contact with all minors and remand to the superior court to consider whether prohibiting Jones from contact with his minor children is reasonably necessary under the principles discussed above.

## II. OFFENDER SCORE CHALLENGE

Jones argues that his prior class C felony conviction of third degree domestic violence assault should have washed out under RCW 9.94A.525(2)(c). We hold that even assuming error, the error was harmless.

### A. PRINCIPLES OF LAW

We review a superior court's offender score calculation de novo. *State v. Moeurn*, 170 Wn.2d 169, 172, 240 P.2d 1158 (2010). RCW 9.94A.525(2)(c) provides,

> Except as provided in (e) of this subsection, class C prior felony convictions other than sex offenses shall not be included in the offender score if, since the last date of release from confinement (including full-time residential treatment) pursuant to a felony conviction, if any, or entry of judgment and sentence, the offender had spent five consecutive years in the community without committing any crime that subsequently results in a conviction.

Erroneous sentences may be challenged for the first time on appeal. *State v. Ross*, 152 Wn.2d 220, 229, 95 P.3d 1225 (2004). A defendant cannot "by way of a negotiated plea agreement, agree to a sentence in excess of that authorized by statute and thus cannot waive a challenge to such a sentence." *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 872, 50 P.3d 618 (2002). If a sentence is erroneous, we remand to the superior court for resentencing. *Ross*, 152 Wn.2d at 229. However, "*a reduced standard range*, not a reduced offender score, requires resentencing on remand." *State v. Kilgore*, 141 Wn. App. 817, 824-25, 172 P.3d 373 (2007), *aff'd*, 167 Wn.2d 28, 216 P.3d 393 (2009) (footnote omitted); *State v. Argo*, 81 Wn. App. 552, 569, 915 P.2d 1103 (1996) (holding that remand for resentencing was unnecessary and the error was harmless because the standard range remained the same, even though the offender score was reduced from 16 to 13).

## B. ANY ERROR IS HARMLESS

Even if we assume that Jones's prior class C felony conviction of third degree domestic violence assault should have washed out, Jones's argument fails.

The State argues that since Jones's sentence for this cause number would still be over 9, then the issue is moot because the standard range sentence would not change. Jones agrees that his offender score would still be over 9 points if his prior class C felony conviction washed out. As such, Jones's sentencing range for this cause number would not change and thus, correcting the error is unnecessary because any error was harmless. *Argo*, 81 Wn. App. at 569; *Kilgore*, 141 Wn. App. at 824-25; *see* RCW 9.94A.510.

The parties agree that the superior court imposed an exceptional sentence on this cause number by setting the in-custody time to run consecutive to the other cause number, but neither of

the parties specifically address the exceptional sentence in their analysis. "An appellate court may uphold an exceptional sentence, despite an incorrectly calculated offender score, when the record demonstrates that the trial court would have applied the same exceptional sentence even had the offender score been calculated correctly." *State v. Jennings*, 106 Wn. App. 532, 543, 24 P.3d 430 (2001); *see also Kilgore*, 141 Wn. App. at 824-25 ("*a reduced standard range*, not a reduced offender score, requires resentencing on remand") (footnote omitted). Because the standard range would remain the same and based on the reasons given for the exceptional sentence, it is clear the superior court would have imposed the same sentence even if the offender score was 10 and not 11. Therefore, we hold that this error does not need to be corrected.

### III. GUILTY PLEA MADE KNOWINGLY, VOLUNTARILY, AND INTELLIGENTLY

Jones contends that he is entitled to withdraw his guilty plea because it was not made knowingly, voluntarily, and intelligently. We disagree.

### A. PRINCIPLES OF LAW

Due process requires that a defendant enter into a guilty plea knowingly, voluntarily, and intelligently. *State v. Robinson*, 172 Wn.2d 783, 790, 263 P.3d 1233 (2011). CrR 4.2(d) provides that a court shall not "accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea."

A defendant may move to withdraw his guilty plea when he is misinformed of the sentencing consequences. *State v. Mendoza*, 157 Wn.2d 582, 592, 141 P.3d 49 (2006). This is because a defendant's guilty plea is involuntary when "based on misinformation regarding a direct consequence on the plea, regardless of whether the actual sentencing range is lower or higher than

anticipated." *Mendoza*, 157 Wn.2d at 591. The defendant must still establish "that the unexpected sentence provision was a direct consequence of his guilty plea; one that represents 'a definite, immediate and largely automatic effect on . . . the defendant's punishment.'" *State v. Smith*, 137 Wn. App. 431, 438, 153 P.3d 898 (2007) (alteration in original) (quoting *Mendoza*, 157 Wn.2d at 588). When a defendant is not misinformed about a direct consequence of his plea, he is not entitled to withdraw it. *See Smith*, 137 Wn. App. at 438.

For this indeterminate sentence per RCW 9.94A.507, the parties agreed that the indeterminate range for second degree child molestation is a minimum of 87 to 116 months (standard sentencing range) with a statutory maximum of 120 months. *See* RCW 9.94A.507. An individual subject to RCW 9.94A.507 must be sentenced to a minimum term and a maximum term. "The maximum term shall consist of the statutory maximum sentence for the offense." RCW 9.94A.507(3)(b). The minimum term shall be either within the standard sentence range or outside it pursuant to former RCW 9.94A.535 (2013). RCW 9.94A.507(3)(c)(i).

### B.  JONES IS NOT ENTITLED TO WITHDRAW GUILTY PLEA

Jones argues that because of the offender score "error" he was not accurately apprised of his offender score. Thus, he says that he did not make his guilty plea knowingly and he is entitled to withdraw it. Further, he contends that the superior court might have sentenced Jones to the highest minimum term of 116 months in the standard range for his offense under the erroneous belief that his offender score was 11.

Jones relies on *State v. Weyrich*, 163 Wn.2d 554, 182 P.3d 965 (2008), for his argument. In *Weyrich*, the State conceded that Weyrich was misinformed that the statutory maximum was 5 years, rather than 10 years. 163 Wn.2d at 557. Still, the State argued that "because the trial court

sentenced Weyrich within the correct standard range, the mistaken maximum sentence had no actual bearing on the plea." *Weyrich*, 163 Wn.2d at 556. Our Supreme Court rejected the State's argument and this type of "subjective hindsight inquiry" and said that it adhered to the precedent that "'a guilty plea may be deemed involuntary when based on misinformation regarding a direct consequence [of] the plea.'" *Weyrich*, 163 Wn.2d at 557 (alteration in original) (quoting *Mendoza*, 157 Wn.2d at 591).

However, *Weyrich* is distinguishable because Weyrich was misinformed that the statutory maximum was 5 years when it was actually 10 years, which was a direct consequence of his plea. Here, Jones was not misinformed.

Jones acknowledged in his statement on plea of guilty for the Craigslist case that he had an offender score of 9+ with a standard range of 87 to 116 months, followed by 36 months of community custody and a maximum term of 10 years. He further acknowledged the stipulated exceptional sentence and that the State would recommend for this count a minimum term of 116 months to a statutory maximum term of 120 months consecutive to all other counts. He also had knowledge that the State would recommend that Jones should serve the sentences imposed on both cause numbers consecutively for a total of "348 months to 360 months, followed by 120 months of community custody." CP at 9 (bold omitted). Jones's sentence mirrored this. Jones was fully informed of the sentencing consequences because he would have received the same punishment under the "correct" offender score of 10 as he would with an "erroneous" offender score of 11.

In *Smith*, the defendant's plea agreement erroneously stated that count I carried a 14- to 18-month standard range and count II carried a 0- to 12-month standard range. 137 Wn. App. at

14

438. Instead, count II carried a 14- to 18-month standard range, but both sentences would run concurrently. *Smith*, 137 Wn. App. at 438. Division One of this court said,

> Although the plea agreement stated an incorrect standard range sentence for count II, Smith was not misinformed about a direct consequence of his guilty plea because he received the same punishment under the correct sentencing range that he would have received under the erroneous range. In short, Smith's controlling sentencing range was 14 to 18 months, a direct consequence of his plea to count I that his plea to count II did not affect.

*Smith*, 137 Wn. App. at 438.

Like in *Smith*, here, Jones was not misinformed about a direct consequence of his guilty plea because he would receive the same punishment under the "erroneous" offender score as he would the "correct" offender score. Jones fails to show that he was misinformed as to a direct consequence of his plea.

Jones also fails to show that the superior court imposed the highest minimum term of 116 months based on the "erroneous" offender score. Second Suppl. Br. of Appellant at 6. The sentence for the Craigslist case was exceptional because it was to be served consecutively to the other counts in the H.W. case. The record demonstrates that the superior court would have applied the same exceptional sentence even had the offender score been calculated correctly. The findings of fact for the exceptional sentence states,

> This departure from the guidelines recognizes the defendant's pleas of guilt to four Class B felony offenses, a substantial prison sentence, a substantial period of community custody, offender treatment, registration as a sex offender, no contact with the victim, and it spares the victim from testifying in a trial. In exchange, the defendant is spared from two life sentences without the possibility of parole, had he been convicted of the original charges.

CP at 23.  The superior court did not appear to rely on the fact that the offender score was 11, rather than just 9+, when imposing the sentence.  Thus, we hold that Jones is not entitled to withdraw his guilty plea because he made his plea knowingly, voluntarily, and intelligently.

IV.  LEGAL FINANCIAL OBLIGATIONS

In supplemental briefing, Jones challenges the superior court's imposition of the $100 DNA database fee and the $200 criminal filing fee that were mandatory costs at the time of sentencing and argues that they should be stricken.  The State concedes this issue and we accept the State's concession.

Recently amended RCW 43.43.7541 prohibits collection of the DNA fee if the offender's DNA has been collected as a result of a prior conviction.  LAWS OF 2018, ch. 269, § 18.  Also, recently amended RCW 36.18.020(2)(h) prohibits the superior courts from imposing the $200 filing fee on indigent defendants.  LAWS OF 2018, ch. 269, § 17.  These statutory amendments apply prospectively to cases pending on appeal.  *State v. Ramirez*, 191 Wn.2d 732, 747, 426 P.3d 714 (2018).

Jones's DNA was previously collected and the superior court found him indigent.  The State acknowledges that the amendments apply to Jones and that this court should remand to strike the $200 criminal filing fee and the $100 DNA collection fee.

The State also says that the interest accrual provision should be stricken.  Jones's judgment and sentence contains an interest accrual provision.  The 2018 amendments prohibit the accrual of interest on nonrestitution LFOs as of June 7, 2018.  RCW 10.82.090; LAWS OF 2018, ch. 269, § 1.

Thus, we remand to the superior court to strike the DNA database fee, the criminal filing fee, and all interest on nonrestitution LFOs after June 7, 2018.

## V.  SAG

### A.  SAG FACTS

On October 28, 2016, the superior court held a status conference hearing.  Jones could not attend the hearing because there was an emergency at the jail.  However, defense counsel stated that he spoke to Jones on the phone the night before and informed him that the trial date would be moved and that there was additional discovery.  Defense counsel told the superior court that he and the State had agreed that they should move for a continuance because (1) defense counsel had recently received an e-mail from the State's office that text messages had been retrieved from a cell phone and defense counsel needed time to review them, and (2) the prosecutor had a trial on November 14 when this case was supposed to start.  The superior court issued an order continuing trial.  In total, the superior court issued six orders continuing trial before Jones pleaded guilty.

### B.  RIGHT TO BE PRESENT

Jones claims that the superior court violated his constitutional due process and equal protection rights by conducting this hearing in his absence.  Jones specifically argues that he has a constitutional right to be present during all critical stages of the criminal proceedings and that the superior court violated this right when he was absent from the hearing on October 28.  We disagree.

Whether a superior court has violated a defendant's right to be present is a question of law that we review de novo.  *State v. Irby*, 170 Wn.2d 874, 880, 246 P.3d 796 (2011).  A criminal defendant has a constitutional right to be present at all critical stages of a trial.  *Irby*, 170 Wn.2d at 880.  As a matter of due process, a critical stage is when a defendant's "'presence has a relation, reasonably substantial, to the ful[l]ness of his opportunity to defend against the charge.'"  *Irby*, 170 Wn.2d at 881 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-06, 54 S. Ct. 330, 78 L. Ed.

674 (1934), *overruled on other grounds by Malloy v. Hogan*, 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964)). This right is not absolute. *Irby*, 170 Wn.2d at 881.

In *In re Personal Restraint of Benn*, our Supreme Court said that a defendant does not have the right to be present during a hearing on a continuance motion. 134 Wn.2d 868, 920, 952 P.2d 116 (1998). The court reasoned that the continuance motion "involved no presentation of evidence, nor was the purpose of the hearing on the motion to determine the admissibility of evidence or the availability of a defense or theory of the case." *Benn*, 134 Wn.2d at 920. The court also said that even if such right existed, his absence was harmless. *Benn*, 134 Wn.2d at 921.

Here, according to *Benn*, Jones did not have a right to be present when the trial court entered the order continuing his trial. Thus, Jones's argument fails.

## C. SPEEDY TRIAL RIGHTS

Jones also argues that the superior court violated his rights to a speedy trial by granting a continuance on October 28. Specifically, Jones alleges that (1) he did not waive his speedy trial rights when he did not sign a waiver and he did not appear at the hearing, (2) the reason for the delay was due to the State failing to properly provide all the discovery and scheduling another trial for the same date which prejudiced Jones, (3) the superior court abused its discretion in granting the continuance, and (4) Jones did not receive a fair and impartial hearing.

However, in the statement of defendant on plea of guilty, Jones expressly waived his "right to a speedy and public trial," and so he cannot challenge his speedy trial rights. CP at 2. His guilty plea thus bars any postplea challenge based on speedy trial rights. *State v. Wilson*, 25 Wn. App. 891, 895, 611 P.2d 1312 (1980); *State v. Phelps*, 113 Wn. App. 347, 352, 57 P.3d 624 (2002). Accordingly, these arguments fail.

D.  INEFFECTIVE ASSISTANCE OF COUNSEL

Closely tied to his other SAG arguments, Jones filed a supplement to SAG arguing that his counsel was ineffective for failing to object to the continuance from the October 28 hearing.  Jones also appears to argue that his counsel was ineffective for failing to request a CrR 8.3(b) dismissal.

An ineffective assistance of counsel claim presents a mixed question of law and fact that we review de novo.  *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).  To establish ineffective assistance of counsel, Jones must show that (1) counsel's conduct was deficient and (2) Jones was prejudiced as a result.  *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011) (quoting *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987)).  A failure to satisfy either prong is fatal to an ineffective assistance of counsel claim.  *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

This *Strickland* test applies to ineffective assistance of counsel claims in the plea process. *State v. McCollum*, 88 Wn. App. 977, 982, 947 P.2d 1235 (1997).  In the guilty plea context, the defendant must show that counsel failed to substantially assist the defendant in deciding whether to plead guilty and that but for counsel's failure to properly advise him, he would not have pleaded guilty.  *McCollum*, 88 Wn. App. at 982.

1.  FAILURE TO OBJECT

Jones argues that his defense counsel was ineffective for not objecting to the continuance because Jones was not present and because he claims the State provided late discovery and mismanaged its caseload.

Performance is not deficient if it can be characterized as legitimate trial strategy or tactics. *Grier*, 171 Wn.2d at 33.  The decision whether to object is a classic example of trial tactics.  *State*

*v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989). "Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal." *Madison*, 53 Wn. App. at 763.

Jones argues that his counsel's performance was deficient because he created an "unpreserved error which forced a choice between a fair trial and a speedy trial." Suppl. SAG at 2. Here, defense counsel's failure to object is not deficient performance. Defense counsel agreed with the State that there should be a continuance because (1) defense counsel needed more time to review the discovery and (2) the State was unavailable. The superior court properly granted the continuance. Therefore, defense counsel was not deficient. Jones has also failed to show that his counsel failed to advise him or that he would not have otherwise pleaded guilty. Thus, Jones's argument fails.

2.      CRR 8.3(b)

Jones seems to argue that his counsel was ineffective for failing to request a CrR 8.3(b) dismissal based on the alleged prosecutor's misconduct. CrR 8.3(b) provides,

> The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial.

Under CrR 8.3(b), a superior court may dismiss a defendant's charges if the defendant shows (1) arbitrary action or governmental misconduct and (2) such governmental misconduct prejudiced his right to a fair trial. *State v. Kone*, 165 Wn. App. 420, 432-33, 266 P.3d 916 (2011). Governmental misconduct "need not be of an evil or dishonest nature; simple mismanagement is sufficient." *State v. Blackwell*, 120 Wn.2d 822, 831, 845 P.2d 1017 (1993). Dismissal under CrR 8.3(b) is an extraordinary remedy. *State v. Wilson*, 149 Wn.2d 1, 9, 65 P.3d 657 (2003).

Additionally, a defendant with a valid guilty plea generally waives complaints about alleged errors that occurred prior to the entry of the plea. *See In re Pers. Restraint of Teems*, 28 Wn. App. 631, 637, 626 P.2d 13 (1981).

Jones makes a number of arguments for why he believes there was governmental misconduct. He refers to his initial SAG where he claims that the State deliberately waited until October 28 to provide late discovery (text messages from Jones's phone). Jones claims that the State had possession of this discovery since December 23, 2015. Jones further claims that the State mismanaged its case by scheduling another case on the same day of his trial on November 14, 2016. He argues that this misconduct prejudiced him by forcing him to choose between a fair trial and a speedy trial.

The record does not support Jones's claim that the State had possession of this discovery since December 23, 2015. Here, Jones's counsel at the October 28, 2016 hearing told the superior court that the prosecutor's office had contacted him "the other day" and told him "there were a number of text messages that had *just been retrieved* from a cell phone." VRP (Oct. 28, 2016) at 2 (emphasis added). This shows that the State had just recently retrieved this evidence and Jones fails to show there was governmental misconduct. Additionally, the superior court gave defense counsel a continuance to prepare and review this new discovery. Because Jones's counsel had possession of the discovery and time to prepare a defense, he fails to show how this prejudiced him.

Also, at the hearing, defense counsel informed the superior court that the prosecutor would have a trial starting on November 14, the same day Jones's trial was supposed to start. Jones fails to show that this was governmental misconduct or mismanagement. Additionally, Jones was not

21

prejudiced by this because his counsel agreed that a continuance was necessary in order to review the discovery.

### E. JUDGE'S IMPARTIALITY

Jones also argues in his supplement to SAG that there was "a structural error due to the judge not remaining impartial." Suppl. to SAG at 1. Jones relies on the facts that the superior court conducted the hearing without Jones present, the superior court stated that Jones's presence was not required, and the superior court allowed the State to provide late discovery. We disagree.

Under the appearance of fairness doctrine, there is only a valid proceeding if a "reasonably prudent, disinterested observer would conclude that the parties received a fair, impartial, and neutral hearing." *State v. Solis-Diaz*, 187 Wn.2d 535, 540, 387 P.3d 703 (2017). The party asserting a violation has the burden of showing evidence of a judge's actual or potential bias. *Solis-Diaz*, 187 Wn.2d at 540.

Jones cites to *Tumey v. Ohio*, 273 U.S. 510, 535, 47 S. Ct. 437, 71 L. Ed. 749 (1927), for the proposition that the denial of an impartial judge is a structural error that requires reversal. But here, Jones has failed to show the judge's actual or potential bias. Jones claims that the superior court judge "'rubber stamped'" every request by the State and that the judge was not impartial because the judge did not conduct the hearing in Jones's presence. Suppl. to SAG at 5. Jones contends that the judge should have conducted the hearing telephonically.

However, as shown above, a defendant does not have the right to be present during a hearing on a continuance motion. *Benn*, 134 Wn.2d at 920. Additionally, defense counsel and the State agreed to the continuance, so the superior court did not "rubber stamp[]" all of the State's requests. Suppl. to SAG at 5. Defense counsel also assured the superior court that he had informed Jones of the continuance and the additional discovery the night before. Thus, this argument fails.

Jones also contends that the judge should have inquired into the State's late discovery and dismissed the case under CrR 8.3(b). Because Jones has not shown governmental misconduct, as shown above, this argument also fails.

CONCLUSION

We reverse the sentencing condition prohibiting Jones from contact with all minors and remand for the superior court to consider the condition consistent with the legal principles outlined in this opinion. We hold that even assuming an offender score error, any error was harmless and Jones is not entitled to withdraw his guilty plea. Further, we remand to the superior court to strike the $100 DNA database fee and $200 criminal filing fee LFOs and to strike all interest on nonrestitution LFOs after June 7, 2018. Finally, Jones's SAG arguments fail.

No. 50398-1-II

We affirm the conviction, reverse the no-contact provision, strike certain LFOs, and remand for action consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
CHANSON, J.

We concur:

_____
MAXA, C.J.

_____
LEE, J.

24